## Case No. 8,060.

### LANGDON et al. v. GODDARD et al.

### [2 Story, 267.] [1]

Circuit Court, D. New Hampshire. May Term, 1842.

PRACTICE IN EQUITY — CHARGE OF FRAUD — CERTAINTY IN FACTS CHARGED — PROOFS FOLLOW ALLEGATIONS — STATE JURISDICTION OVER PROBATE—TESTIMONY TO OVERCOME ANSWER.

1. In suits in equity, the proofs must, to be admissible, be to some allegations or facts charged in the bill or answer; and thus put in issue · by the parties. Therefore, where the bill set up a title under a will, and yet it relied upon a title under certain codicils thereto, which were not alluded to in the bill, it was *held*, at the hearing, that the bill was fatally defective.

  [Cited in Griffin v. Clinton Line Extension R. Co., Case No. 5,816; Cucullu v. Hernandez, 103 U. S. 116.]

2. The state courts have exclusive jurisdiction over the probate of wills and codicils; and the probate thereof in the proper state court is conclusive.

3. Where a codicil is asserted to have been obtained by fraud, and afterwards to have been revoked, if the plaintiff mean to rely upon the codicil and its revocation, as a proof of fraud, in the defendant, and also to rely upon its being either destroyed by the defendant, or to be in his possession and suppressed, it is indispensable, that the bill should allege the execution of the codicil and its revocation, and the fraud of the defendant in obtaining it, and also that he has destroyed it, or has it in his possession, and require a discovery of the facts, and of the contents of the codicil, otherwise these points cannot be used as evidence in the cause.

4. An answer, responsive to the allegations and charges in the bill, will prevail in favor of the defendant, as evidence, unless it be overcome by the testimony of two witnesses, or of one witness and corroborative circumstances.

  [Cited in Le Baron v. Shepherd, 21 Mich. 273.]

Bill in equity. The bill alleges that the complainants [Paul Langdon and another] were appointed executors of Elizabeth Sewall by her will, dated July 25th, 1834. That she died Sept. 8th, 1838; that the said Elizabeth, by her will, and the codicils thereunto annexed, devised all. her estate to certain devisees therein named, which will was proved on December 3d, 1838, and letters testamentary were granted on May 6th, 1839. That on July 10th, 1839, the exec-

[1] [Reported by William W. Story, Esq.]

utors filed in the probate court for the county of Rockingham, and state of New Hampshire, copies of the said will and probate, and gave bonds agreeably to the laws of New Hampshire; by means of which premises, all the property of the said Elizabeth vested in the said executors. That the said Elizabeth, being old and infirm, did, on or about October 1st, 1830, intrust to her nephew, William Goddard, of Portsmouth, the sum of $500, for him, as her agent, to loan the same for her benefit; and that Goddard did, on October 25th, 1830, loan the said $500 to John Floyd, of Kittery, county of York, and state of Maine, and took Floyd's note for that sum, of that date, signed by him, and by Cushman and Goodrich, as his sureties, payable to the said Elizabeth or order in one year, with interest semi-annually; and to secure the said note, he also took a mortgage from the said Floyd, to the said Elizabeth, of his house in Kittery, the interest of which, when it became due, was to be received by the said Goddard, which, with the note and mortgage, he was to hold as her agent, subject to her order. That the said Elizabeth, on or about December 1st, 1834, intrusted to the said Goddard, her agent, the sum of $3,000, to loan for her benefit, and he, on January 1st, 1835, loaned the said $3,000 to Theodore J. Harris, of Portsmouth, and took therefor, the note of the said Harris, of the date aforesaid, payable to the said Elizabeth or order in eighteen months, with interest semi-annually; to secure which, he took from the said Harris, to the said Elizabeth, a mortgage of the mansion house of Harris, situated in the said Portsmouth. That the said Goddard, for several years, the precise time being unknown to the complainants, had the management of the said notes and mortgages, received the interest, and accounted to the said Elizabeth for the same. That on January 29th, 1838, the said Harris died at sea, and the said Mary M. W. Harris, was appointed his administratrix. About this time, the said Goddard returned the said notes and deeds to the said Elizabeth, the same having been, for some cause unknown to the complainants, endorsed by the said Elizabeth in blank. That on August 13th, 1838, the said Elizabeth delivered to the said Goddard the said notes and mortgages against the said Harris, and the said Floyd, in order that the said mortgages should be foreclosed, for the purpose of enforcing the payment of the said notes for her benefit; and on September 8th, 1838, she died, leaving them in the said Goddard's possession, and as part of her estate devised, as aforesaid. That the complainants have repeatedly requested the said Goddard to deliver to them the said notes and mortgages, and they hoped, that no dispute would have arisen, but that the said Goddard would have delivered to them the said notes and mortgages, that they might have administered upon them as the estate of the said Elizabeth. But the said Goddard refuses to comply with the said request, but

sometimes pretends that the said Elizabeth gave him the said notes and mortgages, and sometimes, that he paid her for them; whereas, the complainants' charge the contrary to be true. The bill prays, that the said Goddard may be decreed to give up to the complainants the said notes and mortgages, and render a true account of his agency, and pay over what may be due, and that the said Mary M. W. Harris may be restrained from paying the amount due on the said mortgage, from Theodore J. Harris, to any person other than the complainants, and for further relief.

The answer of William Goddard, was in substance as follows: It admits the making of the will by Elizabeth Sewall, her death, the approval of the will by the complainants, as her executors, and the filing of a copy of the same in the probate court for the county of Rockingham, as set forth in the bill. It then alleges, that Elizabeth Sewall was the defendant's aunt on his mother's side, that he ever regarded her with great affection since his mother's death in 1807, and that she so regarded him, and placed great confidence in him. That he commenced mercantile business in 1828, and soon opened an account current with the said Elizabeth, which account was regularly kept, and from time to time balanced, and finally closed in Sept., 1835; and that their transactions after that time were few, and balanced at the time. That he frequently acted as her agent in collecting dividends for her, and occasionally in investing money for her, for which he never received any compensation, but paid her interest, when her money remained in his hands for any length of time. That on or about October 25th, 1830, on the application of Messrs. Cushman & Goodrich, he loaned, on behalf of the said Elizabeth, $500 to John Floyd, and took his note, with Cushman & Goodrich for sureties, payable to the said Elizabeth or order in one year, with interest semi-annually; and also a mortgage, from the said Floyd to the said Elizabeth, of his house in Kittery, which note and mortgage he soon after delivered to the said Elizabeth. That on April 23d, 1834, by his note of that date, he was indebted to the said Elizabeth, $3,434, and wishing to make a payment on the same, and securely to invest it for the said Elizabeth, he loaned to the said Harris $3,000, part of the said $3,434, on January 1st, 1835, and took Harris's note therefor, dated on the said January 1st, payable to the said Elizabeth or order in eighteen months, with interest semi-annually, and to secure the same, he took a mortgage from the said Harris to the said Elizabeth, of his house in Portsmouth, which note and mortgage was by him soon after delivered to the said Elizabeth, and by her received in part payment of his said note for $3,434, the balance of which he paid on August 29th, 1835.

That the said notes remained in the possession of the said Elizabeth, from about the time of their several dates, until November

9th, 1836, except that the note of Harris was, on or about August 16th, 1836, sent to him by the said Elizabeth, that he might endorse thereon $200, which was then paid by Harris, received by Goddard, and by him paid to the said Elizabeth about that time, when he delivered the note to her. That the first endorsement on the said note was either deducted from the amount loaned to Harris, or by him paid to Goddard, and by him paid to the said Elizabeth. That all the amounts endorsed on the note of the said Floyd, previous to November 9th, 1836, were paid by Cushman & Goodrich to Goddard, for which he gave his receipt, as attorney of the said Elizabeth, which sums were by him paid over to the said Elizabeth upon his first visit to York, and endorsed on the said note, while the same was in the possession of the said Elizabeth. That on November 9th, 1836, he saw the said Elizabeth, at her house in York, and they then and there settled and adjusted all matters between them, and since then, no new matters have arisen between them, except such as were entered into on that day, and except, that he has occasionally collected dividends for her, which he has paid over to her, excepting some $16, which, by mistake, he has omitted to pay over to her. That on November 9th, 1836, he sold and transferred to the said Elizabeth, twelve and a half shares in the Portsmouth Manufacturing Company, and also, all his interest in a loan by him to the said company of $625; also two shares in the New Market Manufacturing Company; all of which were estimated to be of the value of $5,200, and received from the said Elizabeth, in payment, the said notes of John Floyd and of the said Harris, which she then indorsed, and delivered to him, and the mortgage deed from Floyd to her was then delivered to him by her, the note of Floyd being wrapped up in the said deed, together with other notes, amounting to $500; and neither any of the said notes, nor the said deed, were ever after in the custody, or under the control, of the said Elizabeth; but the mortgage deed from the said Harris to her, not being with the note, or not being readily at hand, was not then delivered by her to him. And that, as the property, conveyed by Goddard to the said Elizabeth, was considered to be of greater value than the notes transferred and delivered by the said Elizabeth to him, it was agreed, that Goddard should have the right within any reasonable time, if he thought proper, to repurchase the property by paying to the said Elizabeth the amount of the said notes; but it was distinctly understood, that if he preferred to keep the notes, she was not to call upon him for them or their contents.

That previous to August 13th, 1838, the property of the Portsmouth Manufacturing Company was nearly all destroyed by fire, and the shares, by reason thereof, were much reduced in value. That previous to August 13th, 1838, Goddard had met with many and severe losses, by which he lost nearly all the property he had before that time possessed. That on the said August 13th, 1838, he being on a visit to his said aunt, the said Elizabeth, and, in conversation with her, introduced and mentioned the loss of the Portsmouth Manufacturing Company by fire, he also enumerated his own losses, and said, that he much regretted the said losses on her account, and that if he were able, and she should request it, he should, even then, feel morally bound to make good to her her loss, and repurchase the property he had conveyed to her for the said notes; but that, in consequence of his losses, he was totally unable so to do. To which she replied, "Keep the notes, and here is the mortgage, which belongs to them," or words to that effect, at the same time handing the said mortgage, from Harris to her, to him, from and by which, Goddard understood, that he was entirely freed and discharged from any obligation to repurchase the said property. That after the said November 9th, 1836, the said Elizabeth never mentioned to Goddard the said notes and mortgages, or even alluded to them, except on the said August 13th, 1838, as before stated; that the said Harris's mortgage was suffered by Goddard to remain with the said Elizabeth, until August 13th, because he had confidence, and fully believed, that she would, at any time, deliver it to him on his request. That the complainants have at various times, and now do, claim the shares in the New Market Manufacturing Company, and shares in, and loan to, the Portsmouth Manufacturing Company, as property belonging to the estate of the said Elizabeth.

The answer denies expressly, and absolutely, that the said Elizabeth, on August 13th, 1838, or at any other time, delivered the said notes and mortgages of Floyd and Harris to him, to have them foreclosed, in order to enforce the payment of the said notes for the benefit of the said Elizabeth; but that she delivered them entirely for his own use, and as his own property. The answer admits, that the said Harris died at sea, and that Mary M. W. Harris was appointed his administratrix, as alleged in the bill, and that the complainants have requested him to deliver to them the said notes and mortgages, which he has always declined to do, claiming them as his own property. The answer denies all combination, and prays that Goddard may be dismissed with his costs.

Mary M. W. Harris filed a separate answer, admitting the facts set forth in the bill, so far as they related to her, or to the said Theodore J. Harris, and as to the other facts, that she had no information or belief, other than what was set forth in the bill.

At the May term, 1841, the complainants moved the court, that Mrs. Harris pay into court, or into some bank to the credit of the court, the amount admitted to be due on the note and mortgage of the late Theodore J.

Harris. The court ordered the same to be paid into the Piscataqua Bank to the credit of the court, and that Mrs. Harris be discharged from any further claim on the note and mortgage, and that she have her costs. The defendant, Mrs. Harris, thereupon paid into court the money due from her husband's estate, and all further proceedings against her were abandoned. To the answer of Mr. Goddard, the complainants filed a general replication, and testimony was taken on both sides.

Goodrich & Hackett, for plaintiffs.

S. Greenleaf and J. W. Emery, for defendant Goddard.

STORY, Circuit Justice. As I understand the present case upon the bill, answers, and evidence, there is no small difficulty in acting upon it, owing to technical objections, which I do not perceive how the court is to overcome. The plaintiffs, who are citizens of Maine, claim in their character of executors of the last will and testament of Elizabeth Sewall, of York, in the same state, widow, deceased, dated the 25th of July, A. D. 1834. The will has been proved by the executors, both in the state of Maine, and the state of New Hampshire, in the regular probate courts of each state. The defendants are citizens of New Hampshire. So far, there is no difficulty, and the jurisdiction of this court over the parties is clear and complete. But, then, the plaintiffs have introduced into the evidence other facts, upon which they rely to overcome the answer of the defendant Goddard. These facts are, that the testatrix, subsequently, on the 11th of July, 1838, executed a codicil to her will (which has been duly admitted to probate); that, subsequently, on the 20th of August, 1838, she executed another codicil to her will, which, however, she revoked by another codicil, executed by her on the next day (the 21st of August); and that, on the same day, she executed another codicil, by which she revoked the appointment of the defendant Goddard, as her executor (he having been appointed executor of her will, and continued as such by all the antecedent codicils), and substituted the present plaintiffs as executors. These two last codicils have, also, been admitted to probate. But the revoked codicil of the 20th of August is not produced, nor is it even pretended, that notice has been given to the defendant Goddard to produce it, although evidence of its being in his possession is offered; and the contents are attempted to be proved by parol testimony. The object of introducing the evidence of the revoked codicil seems to be to show, that it was procured fraudulently, and by false suggestions, by the defendant Goddard, for his own benefit and advantage; and that it contained provisions incompatible with the defence set up by his answer.

Now, one of the difficulties, that meets us at the threshold of the case, is that not one of these codicils is, in any manner whatsoever, alluded to in the bill. The will of 1834, and that only, is referred to in the allegations of the bill; and as the allegations and the proofs must be coincident, and the latter are not admissible, unless they are charged, and put in issue by the pleadings, it is plain, that the court can take no notice whatsoever of the codicils, which have been admitted to probate. What makes the omission the more remarkable is, that the very title upon which the plaintiffs found their right, as executors, to maintain the present bill, depends exclusively upon the last codicil executed by the testatrix. As to the revoked codicil, it is true, that it having been revoked, it could not be proved in any court of probate. But, on the other hand, it is equally clear, that if the plaintiffs meant to found any claim upon it, or to use it as evidence, or to repel any title of the defendant under it, the bill ought to have stated its existence, and called upon the defendant to make discovery of its contents, and to state whether it was in his possession; and if he should make the discovery, then the instrument might be used as proof. If he should make none, and yet the possession could be traced home to him, or its destruction could be proved, then parol evidence would be admissible of its contents against him; and not otherwise.

In respect to the will and the codicils admitted to probate, the exclusive jurisdiction, as to the probate thereof, belongs to the state courts of probate; and we have no authority, whatsoever, to inquire into, or examine the validity thereof.[2] But, then, to introduce them in evidence, it is essential that they should be set forth and charged as existing instruments in the bill. This has not been done; and, therefore, I do not see, how the court can take any notice of their existence.

Now, striking these codicils, and the evidence appertaining thereto, out of the case, there is no sufficient evidence, upon which the plaintiffs can maintain their bill. The answer of the defendant, Goddard (for there is no controversy as to the other defendant), wholly denies all the material allegations of the bill; and, as it is responsive to these allegations, it must prevail, unless overcome by the clear and decided testimony of two credible witnesses, or at least by that of one, and other corroborative circumstances, equivalent to another witness. There is no such evidence in the case. On the contrary, the proofs introduced on behalf of Goddard, go strongly to fortify his answer; and the conduct of the executors, since the death of the testatrix, in appropriating to themselves the

---

[2] See Lear v. Armstrong, 12 Wheat. [25 U. S.] 169; King v. Inhabitants of Neatherseal, 4 Term R. 258; Price v. Dewhurst, 4 Mylne & C. 76, 80; Tompkins v. Tompkins [Case No. 14,091].

shares in the Portsmouth Manufacturing Company, and the Newmarket Manufacturing Company, and treating them as the absolute property of the testatrix, coincides with the statements of the answer. It is true, that these facts are not decisive. But it is difficult to conceive, how these shares should have been transferred to the testatrix, and the notes of Floyd and Harris indorsed in blank, and delivered with the attendant mortgages to the defendant Goddard, unless they were designed, between Goddard and the testatrix, to be taken as a substituted security, or as an absolute transfer to her, for the amount of the debts due to her by Floyd and Harris, and by Goddard. At all events, I must say, that the case is involved in so much doubt, that there is no ground, upon which a court of equity is entitled to grant relief. It is never active in a doubtful case; far less in a case, where the circumstances, so far as they go, support an answer responsive to the allegations of the bill, which, if well-founded, furnishes a complete and satisfactory defence upon the merits.

My judgment is, that the bill ought to be dismissed, with costs, but without prejudice.

[The plaintiffs subsequently filed another bill against William Goddard, charging somewhat differently the transactions between Goddard and Elizabeth Sewall. To this bill Goddard filed an answer, which was excepted to. The exceptions were sustained, and the defendant directed to answer more fully. Case No. 8,061.]