## . Cucullu *v.* Hernandez.

1. The failure to inscribe or to reinscribe a mortgage of lands in Louisiana does not affect its validity as against the parties thereto or their heirs.
2. To secure the payment of his note, A., the owner of lands, executed a mortgage of them, which was duly inscribed, but never reinscribed. He subsequently conveyed them to B., who contracted to pay the note as part of the purchase-money, and, to secure it and the remainder of the purchase-money, granted a mortgage of them with vendor's privilege, in the act of sale to him, which was in due time inscribed and reinscribed. After the note was overdue, B. paid interest thereon from time to time; and, to compel him to perform his contract, A. brought suit, which was pending at the time that he filed his bill of foreclosure against B. and C., the latter being the transferee of the note and mortgage executed by A. *Held*, 1. That the prescription as to the note was, against A. and B., interrupted by the payment of the interest, and was suspended during the continuance of that suit. 2. That, notwithstanding the lapse of more than ten years since the inscription of that mortgage, C. is entitled to priority of payment out of the proceeds of the sale of the lands.
3. A party, after contesting, by prolonged litigation, a claim against him, is not entitled to the benefit of art. 2652 of the Civil Code of Louisiana, and cannot cancel it by paying what it cost the party to whom it was transferred.

Appeal from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. Joseph P. Hornor* and *Mr. William S. Benedict* for the appellant.

*Mr. Thomas J. Semmes,* contra.

Mr. Justice Woods delivered the opinion of the court.

On Feb. 1, 1850, the complainant, Joseph S. Cucullu, was the owner of certain real estate situate in the parish of St. Bernard, in the State of Louisiana, known as the Myrtle Grove Plantation. On the day mentioned he made and delivered to one E. Villavaso his note of that date for $10,000 borrowed money, due in twelve months, and secured the same by an act of mortgage, dated Feb. 7, 1850, on said plantation ; and on Feb. 4, 1853, he made another note, also for $10,000 borrowed money, due in one year, payable to himself, and indorsed and delivered it to the same Villavaso, and secured it by another act of mortgage on said plantation. No part of the money

which Cucullu by these notes promised to pay has ever been paid. The mortgages executed to secure the notes were duly inscribed in the proper mortgage office, but have never been reinscribed.

On Sept. 28, 1857, Cucullu sold and conveyed the Myrtle Grove Plantation to one Augustus W. Walker for the purchase price of $135,000. Twenty-five thousand dollars of the consideration was paid in cash, and for the residue Walker gave his notes, two for $5,000 each, both payable Jan. 31, 1858; six for $13,333, payable respectively on December 10 in the years 1858, 1859, 1860, 1861, 1862, and 1863; and he assumed to pay for Cucullu the two notes above mentioned, made by him for $10,000 each, payable to Villavaso. To secure the payment of these obligations for the purchase-money, including the Villavaso notes, Walker, in the act of sale from Cucullu to him, granted a mortgage on the Myrtle Grove Plantation, with vendor's privilege in favor of Cucullu.

The two notes for $5,000 were never paid; it is conceded that they are prescribed, and they do not appear in this case.

Walker paid in full the second of the notes for $13,333, being the one which fell due Jan. 10, 1859, and one half of the first note for $13,333, being the one which fell due Jan. 10, 1858. The other half of this note, with interest, and the four other notes for $13,333, remain wholly unpaid. These unpaid notes of Walker were all claimed by Cucullu, in the bill filed in this case, to be his property.

The mortgage granted in the act of sale by Walker to secure the obligation entered into by him for the payment of the purchase price of the Myrtle Grove Plantation was duly inscribed and twice reinscribed in the mortgage office, according to law, thus preserving the privilege of the mortgage. By act dated Feb. 4, 1858, between Villavaso and Walker, the time for the payment by the latter of the Cucullu notes was extended until Feb. 1, 1859.

In 1860 Cucullu, desiring that the notes for $10,000, given by him to Villavaso, and secured by mortgages on the Myrtle Grove Plantation, should be paid off by Walker, who had assumed their payment in the manner above mentioned, began a suit against Walker in the District Court for the Parish of St.

Bernard, to compel him to pay them, and he prayed that Walker be ordered and adjudged to discharge the said Villavaso mortgages. To this suit Walker filed an exception, in which he alleged that the petition disclosed no cause of action; the exception was overruled. Walker then filed an answer, denying that the Villavaso notes were due, and alleging that they had been extended and renewed. The court gave a decree for Cucullu, treating the suit as one to enforce the specific performance of Walker's contract to pay the Villavaso notes and mortgages. This decree was reversed by the Supreme Court of Louisiana, on the ground that Villavaso was not made a party to the suit, and the cause was remanded in order that Villavaso might be brought in.

Thereupon, on Oct. 7, 1861, Cucullu filed an amended petition, in which he averred that, " by the decision of the Supreme Court rendered in this case, the holders of the mortgage notes and claims, the payment of which petitioner sought to enforce in his original petition, were necessary parties to the suit; " the amended petition, therefore, prayed that Villavaso be made a party, and judgment rendered as prayed for in the original petition.

Villavaso, having been cited, filed an answer to the amended petition on Feb. 7, 1862, in which he averred that Cucullu had no cause of action against him, because he being the holder and owner of the two notes of Cucullu for $10,000 each, secured by the mortgages of Cucullu to enforce their payment, had already issued executory process against Walker on his contract to pay these notes. After the filing of this answer nothing was done in the suit, and it is still pending.

On Oct. 21, 1861, a petition was filed in the District Court of St. Bernard Parish by Villavaso against Walker to foreclose the mortgages given by Cucullu to him on the Myrtle Grove Plantation to secure the two notes made by Cucullu for $10,000 each. This suit was a writ of seizure and sale taken out against Walker, who was Cucullu's vendee, and who was, at the time the writ was issued, in possession of the plantation. The writ bore date Nov. 21, 1861.

In this suit Hernandez, on Oct. 1, 1874, intervened and filed his petition, averring that he was the owner of certain of the

notes made by Walker to Cucullu, and secured by mortgage on the Myrtle Grove Plantation, and claiming that the Walker mortgage had precedence of those from Cucullu to Villavaso, because the latter had not been reinscribed within ten years, and praying an injunction against the sale of the plantation under the writ of seizure and sale, which had been issued upon the mortgages given by Cucullu to Villavaso. The injunction was allowed. Before this suit was finally terminated, Villavaso sold out to one James E. Zunts his interest therein, and all his title to the notes executed by Cucullu, and to the mortgages on the Myrtle Grove Plantation given to secure them, and Zunts was substituted as plaintiff in the suit.

The court declared Hernandez, by reason of his ownership of the Walker notes, to be a first-mortgage creditor on the Myrtle Grove Plantation. Zunts, the vendee of Villavaso, alone appealed from this judgment. It was affirmed by the Supreme Court in May, 1876, on the ground that Villavaso had not preserved the priority of his mortgages as against Hernandez, who was declared to be a third person, by proper reinscription, and therefore Hernandez, representing a part of the second mortgage, had priority over the first.

On Aug. 7, 1875, the mortgaged property had been sold by the sheriff, and adjudicated to Zunts for $10,000. He paid no part of the purchase-money, because he claimed the right, as first mortgagee, to retain the entire price as in part payment of his mortgages.

After the decision in favor of Hernandez, just mentioned, Zunts, by notarial act dated July 7, 1877, sold and transferred to Hernandez " all his right, title, interest, claim, and demand, of whatsoever nature or kind, in and to Myrtle Grove Plantation."

Hernandez having thus, as he claimed, acquired all the rights of Zunts in the suit, took a rule to compel the sheriff of St. Bernard Parish to execute a deed to him for the Myrtle Grove Plantation on payment of $10,000, the price at which it was struck off to Zunts at the sale made on Aug. 7, 1875. This rule was made absolute July 7, 1877.

On Nov. 23, 1877, the bill in this case was filed by Cucullu. He claimed to be the owner of five of the notes made by Walker

for the purchase-money of the Myrtle Grove Plantation. He averred that the plantation was the property of the succession of Walker, the mortgagor, but that it was claimed by Hernandez and various other persons, each of whom asserted title to four of the Walker notes, which he, the complainant, claimed as his property, and to collect which he had brought the suit to foreclose.

On March 23, 1879, the Circuit Court made a decree in the case, by which it was declared that the title to the Myrtle Grove Plantation was in the succession of Walker; that Cucullu was the holder and owner of the unpaid notes made by Walker and secured by his mortgage on said plantation, being the same mentioned in the bill of complaint, amounting to the sum of $57,000, with interest, as claimed in the bill, and that the same continued to be a lien upon said plantation; that Hernandez, by purchase from Zunts, the vendee of Villavaso, was the owner of the two notes for $10,000 made by Cucullu and secured by mortgages on said plantation before its sale by Cucullu to Walker. The decree directed the sale of the plantation and the application of the proceeds, first, to the payment of the Cucullu notes held by Hernandez, and the surplus, if any, to the payment of the Walker notes held by complainant; the effect of the decree being to give priority to the notes and mortgages executed by Cucullu.

The complainant Cucullu alone appealed from this decree. This fact eliminates from the case many controversies decided by the Circuit Court, and the evidence applicable thereto, and leaves only for decision by this court these questions: Whether the Villavaso notes and mortgages were subsisting obligations; whether Hernandez was their owner; and whether, as such owner, he was entitled to priority of payment over the unpaid Walker notes and the mortgage by which they were secured, and of which Cucullu was decreed to be the owner.

The complainant insists, *firstly*, that Hernandez is not the owner of the Villavaso notes; that the act of transfer by Zunts to Hernandez, dated July 7, 1877, conveyed only the rights of Zunts as purchaser of the plantation at the sheriff's sale, made on Aug. 7, 1875; and to support this view the complainant

refers to the affidavit of Zunts, filed by him in the Circuit Court in support of a petition for rehearing in this case. In this affidavit Zunts declares that by said act he did not transfer to Hernandez the Cucullu notes, but only his rights as purchaser of the Myrtle Grove Plantation under the sale of Aug. 7, 1875.

This affidavit cannot be considered in evidence, for two reasons: first, because the transfer by Zunts to Hernandez being in writing must speak for itself, and the purpose of Zunts in executing the transfer must be derived from it, and not from his subsequent declarations; and, second, even if the evidence were competent, it should have been presented in the form of a deposition regularly taken, according to the equity rules by which the witnesses might have been subjected to cross-examination. The affidavit, being purely *ex parte*, cannot be considered on the final hearing.

Looking at the act of transfer from Zunts to Hernandez, we think that by a fair construction it conveys the Cucullu notes and mortgages. It purports to transfer to Hernandez " all the right, title, interest, claim, and demand, of whatsoever nature or kind," of Zunts in and to the Myrtle Grove Plantation. These terms clearly include a conveyance of the rights of Zunts as mortgagee of the plantation.

But if the transfer had specifically and in terms conveyed to Hernandez the rights of Zunts as purchaser under the sale of Aug. 7, 1875, and nothing more, we think it would have carried with it the notes and mortgages under which the sale was made. By virtue of the transfer the vendee would have the right to use them to pay his bid. This clearly implies title to the notes, and the mortgages by which they were secured. The fact that the sale was not effectual to convey the title did not divest Hernandez of his claim to the notes and mortgages, and reinvest them in Zunts. It is a question between Zunts and Hernandez. Zunts sold to Hernandez his rights as adjudicatee, and all other title and claim which he held to the Myrtle Grove Plantation; he received his pay for the transfer; he has no rights left, either as a purchaser or a mortgagee, and whatever interest he had in either character is vested in Hernandez by the act of transfer.

But a conclusive answer to complainant's claim, that the ownership of the Cucullu notes and mortgages was not trans. ferred to Hernandez by Zunts, is found in the bill of complaint, which is framed on the assumption of such ownership by Hernandez. The bill avers that " said James E. Zunts, by public act, in the city of New Orleans, on the 16th of April, 1877, did sell and transfer unto said Joseph Hernandez all his pretended right, title, and interest in and to said Myrtle Grove Plantation, and all his pretended rights in and to the said suit of E. Villavaso, James E. Zunts subrogated, *versus* Augustus W. Walker, No. 413 of the docket of the Second Judicial District Court of the Parish of St. Bernard, and all his pretended right in and to the notes sued on, and the pretended privileges and rights of mortgage thereunto attached, whatever they might be ; and the said Joseph Hernandez, in consequence of said transfer and sale by James E. Zunts, now claims and pretends to be the owner of said property hereinbefore fully described."

After such an averment in the bill of the purpose and effect of the act of transfer between Zunts and Hernandez, it does not lie in the mouth of Cucullu to say that the act did not convey to Hernandez the title to the Cucullu notes and mortgages. The effect of the act of transfer is not put in issue. What Hernandez claims to be its legal import is admitted by the bill, and that is the end of the controversy upon the point. We think, therefore, that the title of Hernandez to the Cucullu notes and mortgages must be considered as settled.

*Secondly*, It is insisted, however, by complainant, that even should the title of Hernandez to these notes and mortgages be conceded, nevertheless it can avail him nothing, because the notes are prescribed.

Article 3540 (3505) of the Civil Code of Louisiana declares : " Actions on bills of exchange, notes payable to order or bearer, except bank-notes, those on all effects negotiable or transferable by indorsement or delivery, and those on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from the day when the engagements were payable." By article 3551 (3516) of the same code, prescription may be interrupted in the two modes laid down in article

3516 (3482) ; viz., first, by a natural interruption, as when the debtor makes acknowledgment of the debt, or, second, by the institution of a suit against the debtor.

One of the Cucullu notes fell due Feb. 1, 1851, and the other Feb. 4, 1854. By his act of sale of the Myrtle Grove Plantation to Walker on Sept. 27, 1857, Cucullu declared that these notes had been renewed and would fall due Feb. 4, 1858.

The complainant claims that this was the last natural interruption of the prescription on the notes' by Cucullu, and that as no suit has ever been instituted against him on the notes by any person, or any demand made upon him for their payment, the notes are prescribed.

By the act of sale from Cucullu to Walker of the Myrtle Grove Plantation, under date of Sept. 28, 1857, Cucullu acknowledged the notes given by him to Villavaso to be valid debts, and specified the time when they would fall due. Walker agreed to pay the Cucullu notes in the place and stead of the latter, and such payment was to be in part payment of the purchase price of the plantation.

Walker made payments of interest on these notes from 1858 up to Feb. 4, 1861. It is the settled law of Louisiana that payments made by a purchaser of property who assumes as part of the price a debt due by his vendor, is an interruption of prescription as to that debt, both as to the purchaser and vendor. *Cockfield* v. *Farley*, 21 La. Ann. 521 ; *Collier* v. *His Creditors*, 12 Rob. (La.) 398. So that prescription on the Cucullu notes was interrupted as late as Feb. 4, 1861.

But on Feb. 2, 1860, Cucullu, as we have seen, instituted suit against Walker, to enforce the latter's contract included in the act of sale to him of the Myrtle Grove Plantation, to compel him to pay the Cucullu notes. To this suit Walker appeared and made various defences, and the case has been pending from that time until now, and still remains undisposed of. In our opinion this suit is a natural interruption of the prescription, for it is an acknowledgment by Cucullu, in the most explicit form, that the notes are unpaid and of his liability to pay them. It is an acknowledgment that continues from day to day as long as the suit remains pending, so that it is not merely an interruption but is a suspension of the prescription.

*Furguson* v. *Glaze*, 12 La. Ann. 667 ; *Barrow* v. *Shields*, 13 id. 57.

The claim, therefore, that the Cucullu notes are prescribed will not hold.

*Thirdly*, It is next insisted by complainant that the mortgages given by him to Villavaso, not having been reinscribed, as required by the Code of Louisiana, within every period of ten years after their date, have become prescribed, and have lost their lien upon the property described in them.

It is clear from the decisions of the Supreme Court of Louisiana that this result follows only as to third persons, and not as to the parties to the mortgage. A mortgage to affect third persons must be inscribed in the mortgage office, and to preserve its original rank as to them, it must be reinscribed before the expiration of ten years from the original inscription. The policy of the law is to make an investigation of liens easy and simple, and therefore, except for legal mortgages in favor of minors and married women, no search for mortgages in the mortgage office is required for a greater period than ten years prior to the date of search.

But this applies to third persons only, and not to the mortgagor or his heirs.

" By the words ' third persons ' are to be understood all persons who are not parties to the act or to the judgment on which the mortgage is founded." Civil Code art. 3343.

" Consequently neither the contracting parties nor their heirs, nor those who were witnesses to the act by which the mortgage was stipulated, can take advantage of the non-inscription of the mortgage." Civil Code, art. 3344.

By the omission to reinscribe a mortgage within ten years from the date of the first inscription, the effect of the inscription and not of the mortgage itself ceases. The mortgage remains unimpaired as between the mortgagor and his heirs, and the mortgagee.

The general doctrine as stated has been repeatedly declared by the Supreme Court of Louisiana. *Bonin* v. *Durand*, 2 La. Ann. 776 ; *Haines* v. *Verret*, 11 id. 122 ; *Seyburn* v. *Deyris*, 25 id. 483.

The rule was applied to a witness to the mortgage in the case of *Brown.* v. *Sadler,* 16 id. 206.

From these provisions of the Code of Louisiana and the decisions of the Supreme Court of the State it is clear that no inscription of the Villavaso mortgages was necessary to affect Cucullu. He being the mortgagor, they remained valid as against him, without inscription or reinscription, and preserved their rank over a subsequent mortgage in which he was the mortgagee.

It is claimed, however, by complainant, that although the doctrine may apply to the original inscription it does not apply to the reinscription of a mortgage; that unless reinscribed within ten years from its date the mortgage becomes prescribed and ineffectual to bind even the mortgagor.

This claim does not seem to us to be founded in reason or to be sustained by any decisions of the Supreme Court of Louisiana. On the contrary, that court, as will be seen by the cases above cited, makes no distinction, so far as this question is concerned, between the original inscription and subsequent reinscriptions.

We think, therefore, that neither the lien of the mortgages executed by Cucullu nor their priority as against the subsequent mortgage executed to him by Walker has been lost.

The complainant claims, *fourthly,* that Hernandez is estopped from setting up the mortgages from Cucullu to Villavaso as superior to the mortgage from Walker to Cucullu, because, in his intervention in the case of *Villavaso, Zunts substituted,* v. *Walker,* he had claimed that the mortgages from Cucullu to Villavaso had lost their lien for want of reinscription, and the complainant asserts that this claim was sustained in that case by the Supreme Court of Louisiana.

An examination of the petition of Hernandez in that case, and the decision of the Supreme Court, shows that the question of precedence between the mortgages was raised on a different state of facts from that on which the question arises here.

Hernandez, in the suit of *Villavaso* v. *Walker,* in which Cucullu was not a party and did not in any way appear, claimed that the mortgages from Cucullu to Villavaso had, for want of reinscription, lost their rank as against him, he being the owner

of the mortgage from Walker to Cucullu. The Supreme Court of Louisiana sustained this view, and put its decision expressly on the ground that Hernandez was a third person in the acts of mortgage given by Cucullu to Villavaso, which had not been reinscribed.

In the present suit Cucullu is a party, and is insisting that the mortgages given by himself to Villavaso have lost their lien for want of reinscription, and that the mortgage given to him by Walker should have priority.

The question whether the Walker mortgage, in the hands of Hernandez as owner, is entitled to priority over the Cucullu mortgages when held by Villavaso, because the latter had not been reinscribed, is very different from the question whether Cucullu, when claiming to be the owner of the Walker mortgage, can assert priority over the mortgages executed by himself to Villavaso, because the latter had not been reinscribed.

In his intervention Hernandez claimed priority for the Walker mortgage as against Villavaso, holder of the Cucullu mortgages, because, as to the latter, he was a third person and the mortgages had not been reinscribed. In this case it is Cucullu who claims priority for the Walker mortgage, which, he says, he owns, against his own mortgages to Villavaso, for want of the reinscription of the latter. But as to the mortgages made by himself, he is a party and not a third person, and as to him no reinscription is necessary.

The position of Hernandez in his petition in the case of *Villavaso* v. *Walker* is not inconsistent with his claim here, and his claim in this case has not been decided against him by the Supreme Court of Louisiana in the case referred to. See *Villavaso* v. *Walker*, 28 La. Ann. 712.

*Fifthly,* The complainant claims that the notes given by Cucullu to Villavaso were novated, and that Cucullu was released by the extension of the time for their payment, granted to Walker by Villavaso, by the act of Feb. 4, 1858.

This claim is based on article 3063 of the Civil Code, which declares: "The prolongation of the time granted to the principal debtor, without the consent of the surety, operates a discharge of the latter."

To make this article applicable, it must appear that by the

act of Feb. 4, 1858, by which Walker agreed with Cucullu to pay the notes executed by the latter to Villavaso, Walker became the principal debtor, and Cucullu the surety.

It cannot, we think, be reasonably claimed that a debtor is converted into a surety by his creditor's acceptance of an additional promise from a third person to pay the debt due him by his debtor. There is no element of suretyship in such a contract, unless it be that the additional debtor might be regarded as surety for the original debtor. The relation between the creditor and the original debtor is not changed by such an arrangement.

It is, however, a sufficient answer to this claim to say that the bill of complaint contains no allegation in reference to the extension of the time of payment granted by Villavaso to Walker, and no claim that Cucullu was discharged thereby, and no allusion is made to the subject in any part of the pleadings. The claim that, by the contract of Walker with Cucullu to pay his notes to Villavaso, Walker became the principal debtor and Cucullu the surety, and that, by the indulgence given by Villavaso to Walker, Cucullu, as such surety, was discharged, appears in the case for the first time in the brief of complainant's counsel.

The evidence to show the facts on which this claim is based cannot be regarded, for there is no averment in the bill to which it can be applied. It is not pertinent to any issue in the case. *Whitely* v. *Martin*, 3 Beav. 226; *Smith* v. *Clarke*, 12 Ves. Jr. 477; *Langdon* v. *Goddard*, 2 Story, 267; *Gordon* v. *Gordon*, 3 Swans. 400.

*Lastly*, It is averred by complainant that the purchase made by Hernandez from Zunts, of the notes and mortgages given by Cucullu to Villavaso, was the purchase of a litigious right; and even if the notes and mortgages are valid claims, no more can be recovered by Hernandez than he paid to Zunts, and this sum complainant avers to be $2,100.

This claim is based on article 2652 of the Civil Code of Louisiana, which declares: "He against whom a litigious right has been transferred, may get himself released by paying to the transferee the real price of the transfer, together with the interest from date."

The next article, 2653, defines what is a litigious right, as follows : " A right is said to be litigious whenever there exists a suit or a contestation on the same."

This claim cannot be sustained, for two reasons : *First,* Hernandez did not purchase the Villavaso notes until after the judgment in the Supreme Court thereon.  The right ceases to be litigious when judgment has been rendered. *Marshal* v. *McCrea,* 2 La. Ann. 79.  *Secondly,* it has been repeatedly decided by the Supreme Court of Louisiana that the purpose of article 2652 was to prevent litigation, and therefore a defendant who, instead of paying the price of the transfer, contests the suit and prolongs the litigation, defeats the very object of the article, and cannot exercise the privilege it gives.  The complainant should have paid or tendered to Hernandez the real price of the transfer with interest from date.  He would then have been in a position to claim the benefit of article 2652.  He cannot, after contesting the claim inch by inch and up to the court of last resort, cancel it by paying what it cost his adversary. *Leftwich* v. *Brown,* 4 id. 104 ; *Pearson* v. *Grice,* 6 id. 233 ; *Rhodes* v. *Hooper,* id. 356 ; *Evans* v. *De L'Isle,* 24 id. 248.

We think that the attempt of Cucullu to get rid of the notes and mortgages given by him to Villavaso, or postpone them to the subsequent notes and mortgage given to himself by Walker, must fail, and ought in equity to fail.  Thirty years ago he borrowed from Villavaso $20,000, and to secure this money executed mortgages to him on the Myrtle Grove Plantation which he then owned.  He has never paid that debt.  He afterwards sold the plantation to Walker and took his notes for part of the purchase-money, and for the residue his stipulation to pay the Villavaso notes and mortgages.  Walker has not paid them.  While enforcing the lien of the Walker mortgage and bringing the property to sale to satisfy it, equity requires that out of the proceeds the notes of Cucullu to Villavaso should be first paid, unless some reason in law exists by which they are postponed.  We have been able to find no such reason.  We think the decree of the Circuit Court was right, and that it should be affirmed ; and it is

*So ordered.*