CAVANAUGH, Judge.
The original plaintiff, Lerner Shops of Louisiana, Incorporated, brought this suit against the defendants and alleged that it was the owner of a parcel of land situated in the City of Baton Rouge in the square bounded by Third, Florida, Lafayette and Laurel Streets, but fronting on none of the four streets. The said parcel of land is 54 feet east and west and 56 feet north and south. In its deed dated March 2, 1937, from General Realty Corporation, it acquired a servitude of passage across a strip of land 10 feet wide running along the west side of the above described parcel of land and continuing north to Laurel Street.
*492 The defendants, Mrs. Dorothy Mae J. Reeves and Mrs. Mildred J. LeFay, owned the property immediately north of plaintiff’s property which extends north to Laurel Street, including the 10 foot strip lying west of defendant’s property and which is subject to the servitude acquired by plaintiff. Defendants acquired their property by deed dated August 31, 1944, from General Realty Corporation, the same vendor of plaintiff, Lerner Shops of Louisiana, Incorporated. The plat marked P-1 and filed in the record shows the location of the specific pieces of property, as well as the servitude and the obstruction complained of 'by plaintiff in this suit. It exists at the southern end of the 95 foot 4 inch strip owned by defendants. The General Realty Corporation owns the 10 foot strip lying west of plaintiff’s property (yellow area), and defendants own the 10 foot strip from there to Laurel Street, both subject to the servitude described in the deed from General Realty Corporation to Lerner Shops of Louisiana, Incorporated, March 2, 1937. Therefore, General Realty Corporation owns the south 56 feet of the 10 foot alley, and defendants own the 95.4 feet, all of which was originally subject to the servitude in favor of the plaintiff under its acquisition and still exists, unless it has been lost.
The basis of plaintiff’s suit is to compel the defendants to remove an obstruction in the form of a stairway placed on the west end of defendants’ building and to enjoin defendants from further encroaching upon the servitude.
The defendants filed exceptions of no cause and no right of action, pleas of prescription of ten years to both the original and supplemental petitions of plaintiff. No request was made of the Lower Court to dispose of them prior, to a trial on the merits, and they were overruled. The defense to the suit was based on three grounds: (1) Extinguishment of the servitude by non-use for a period of ten years; (2) Extinguishment of the servitude by abandonment; (3) The sale of a litigious right from the original plaintiff to the substituted plaintiff which defendants were entitled to purchase and for which they deposited the sum of $50 in the registry of the' court at 'the time they filed answer to the supplemental and amended petition of Kate Latter Lorning on February 9, 1953.
The obstruction is in the north 95 feet 3 inch strip of the 10 foot strip, and the controversy relates to that strip alone, and has nothing whatever to do with the south 56 feet of the servitude. The obstruction to the passageway is admitted.
The plaintiff by brief argues that:
“Abandonment and Prescription.
“Article 743 of the [LSA-] Revised Civil Code provides that:
“ ‘Servitudes are established by all acts by which property can be transferred * * * ’.
“In Kohn v. Bellott, 169 La. 352, 125 So. 269 [270], the Supreme Court said:
“ ‘The right of passage is a discontinuous servitude, and, whether apparent or not, can be established only by a title. Immemorial possession itself is not sufficient to acquire it. Rev.Civ. Code, Arts. 727, 766; Lawson v. [Shreveport] Waterworks Co., 111 La. 73, 35 So. 390; City of Shreveport v. Simon, 132 La. 69, 74, 75, 60 So. 795; Broussard v. Etie, 11 La. 394; Fisk v. Haver, 7 La.Ann. 652; Cleris v. Tieman, 15 La.Ann. 316; Morgan v. Lombard, 26 La.Ann. 462; Torres v. Falgoust, 37 La.Ann. 497.
“Not only was this servitude of passage established by title, but it was established by two authentic acts of record in the office of the Clerk and Recorder of this Parish and have both been specifically recited hereinabove.
“Article 754 of the [LSA-] Revised Civil Code says:
“ ‘Servitudes being established on estates in favor of other estates, and not in favor of persons, if the grant of the right declares it to be for the benefit of another estate, there can be no *493 doubt as to the nature of this right, even though it should not be called a servitude.’
“And Article 727 of the [LSA-] Revised Civil Code provides:
“ ‘Servitudes are either continuous or discontinuous. * * * Discontinuous servitudes are such as need the act of man to be exercised.
“ ‘Such are the rights of passage, of drawing water, pasture and the like.’
“We are concerned here on the claim of defendants that the servitude has been extinguished and, having been extinguished insofar as plaintiffs are concerned, all of their rights and claims pass over to and now belong to defendants and they base their claim on Article 783 of the [LSA-] Revised Civil Code and particularly to Section 2 and 4 of that article. It reads as follows:
“ ‘Art. 783 Methods of extinction of servitudes.
“ ‘Servitudes are extinguished: *' *
“ ‘2. By prescription resulting from non-usage of the servitude during the time required to produce its extinction. * * *
‘“4. By the abandonment of that part of the estate which owns the servitude.’
“On prescription of non-usage, the Code provides:
“ ‘Art. 790. The time of prescription for non-usage begins for discontinuous servitudes, from the day they ceased to be used’.
“Article 789 of the [LSA-] Revised Civil Code provides that a right to servitude is extinguished by non-usage of the same during ten years and the Supreme Court, in an early case, and which has been maintained as constant jurisprudence in this State, said that:
“ ‘The Code distinctly provides that a right to a servitude is extinguished by the non-usage of the same during ten years, which, for discontinuous ser-vitudes, begin from the day they ceased to be used.’ Thompson v. Meyers, 34 La.Ann. 615.
“And the syllabus in the case of Jouett v. Keeney, 17 La.App. 323, 136 So. 175 says:
“ ‘Ultimate grantee of property lost right in dedicated strip by failure to use it as passageway for more than ten years.’
“Article 792 of the [LSA-] Revised Civil Code provides:
“ ‘If the owner of the estate to whom a servitude is due, is prevented from using it by any obstacle which he can neither prevent nor remove, the prescription of non-usage does not run against him as long as this obstacle remains.’
“In the note on Construction and Application of this Article on Page 750, Volume 3 of West’s Civil Code, the author says:
“ ‘This article has reference only to obstacles which owner has not consented to and does not permit landowner to suspend or extend the pre> scription of ten years by which servitude is extinguished for non-user.’
“Undoubtedly, a stairway and platform, the erection of which Lerner did not only not consent to but to. which it actually objected, comes within the provisions of this article.
“But even more important from- a legal and factual standpoint in this case are the provisions of the next succeeding article and we quote, to-wit:
“ ‘Art. 793. To preserve the right of servitude and prevent prescription from running against it, it is not necessary that it should be exercised exclusively by the owner to whom it is due, or by those who use his rights, or who represent him directly, as the usu-fructuary, the lessee or tenant, the attorney in fact or agent. It suffices if the servitude has been exercised by *494 workmen employed by the owner, or by his friends, or those who come to see him.’
“The next following Article further provides:
“ ‘Art. 794. The servitude is preserved to the owner of the estate to which it is due, by the use which any one, even a stranger, makes of it, provided it be used as appertaining to the estate.
“ ‘Thus the servitude is preserved to the owner by the use which a possessor ip. bad faith, who is in possession of the estate to whom it is due, makes of the servitude.’
“These two Articles speak for themselves and need no decisions to explain or maintain them. They continue in full force and effect the provisions of the Civil Code of 1825 and thus, for more than 125 years, the preservation of a servitude to the owner can be maintained against prescription by its use by others than the owner himself as specifically set forth by the Code.
“We recognize that where prescription by non-usage has been pleaded as it was by defendants here, the burden of proving the exercise of the right of servitude within the time of prescription is placed on the party claiming the right (Ledoux v. Allegre, 10 La.Ann. 706) and we fully assumed and discharged that burden and obligation in the Court below-.
“Lerner acquired this property and the servitude on March 2, 1937. Prescription for non-use therefore could not start before that day and need run for a full ten years before it becomes effective. Under the provisions of [LSA-] Revised Civil Code [Art.] 789, no prescription could commence to run against plaintiffs until they ceased to use the right of way and servitude. This suit was filed on February 24, 1950 and the exceptions of prescriptions and abandonment were filed by defendants on March 20, 1950. These dates are important and must be kept in mind.”
Bruce Wellington, Southern District Manager of Lerner Shops, testified that, as an employee of Lerner Shops and in his supervisory capacity, he had regularly used the alley, to get in from Laurel Street to the Lerner property, to inspect the physical condition of the building and to make repairs with a paint crew employed by Lerner, to examine the roof, the air conditioning unit and to park his car and to have trucks servicing Lerner Shops come into, over, on, and park in the alley; and that this use of the alley had occurred and continued from the time Lerner acquired the property in 1937 and throughout the entire period until after the suit was filed.
Henry Townsend, formerly an employee of the State Roofing and Supply Company, and at the time the case was tried the owner of that company, testified that his company, represented by Mr. LeDay (now deceased) as foreman, used the alley way during 1941 up to 1943 to bring materials and supplies and workmen to repair and maintain the roof of the Lerner Building and that he himself, since 1943, continuously and regularly maintained the roof of the Lerner Building by using the alley and servitude for the passage and placing of materials for work done.
M. W. Harper, a paint contractor, who testified as a witness for defendants and who at one time rented property abutting the alley, remembered two occasions between the years of 1936 and 1946 that he had been requested by a representative of Lerner to move his car or truck parked in the alley so that Lerner’s workmen could move in materials and supplies to be used in repairing and maintaining the building and that when he did move the car Lerner’s workmen actually used the alley.
Joseph Hannie, a witness for defendants and the tenant who erected the building adjacent to the alley, admitted on cross-examination that he had been asked to and had acquiesced in the request to move his car out of the alley so that workmen and employees for Lerner could get in and out of the alley on business for Lerner.
Louis Aucoin, a witness for defendant, did not deny that plaintiff had used the alley from time to time for its own business. *495 The defendants attempted to prove by this witness that plaintiff Lerner had leased the alley way for automobile parking purposes, but this alley way was never intended to be leased to Aucoin but that his customers did use the space to park cars and that he, not Lerner, had erected the barrier without objection to prevent cars being moved off his lot through the alley on to Laurel Street without the payment of parking fees due him.
All of the above testimony dealt with the use of that part of the servitude west of plaintiff’s property, and none of the testimony adduced by defendants suggested the abandonment, renunciation or remission in connection with the servitude across the property owned by defendants and on which the encroachment in question was constructed. Defendant’s lessee, Hannie, used the servitude as a way of ingress and egress to the building on which he placed the stairway and platform.
We agree with the Trial Judge on his finding of fact that the plaintiffs had not lost their right of servitude by abandonment or by prescription of non-use.
This now brings us to the more serious ■defense brought forward by defendants, in which it is alleged alternatively that if a ■servitude of passage was in existence over and across defendant’s, property at the time the suit was filed that the substitute plaintiff, Kate Latter Lorning, purchased said right -of passage which was the subject matter of the lawsuit and was in litigation and was a litigious right at the date ■of transfer of the said right of passage from Lerner Shops of Louisiana, Incorporated, to Kate Latter Lorning.
The act of sale between Lerner Shops of Louisiana,- Incorporated, and Mrs. Kate Latter Lorning is dated July 1, 1951 and was filed for record in the office of the Clerk of Court of East Baton Rouge Parish of July 16, 1951. The act of sale was •executed in New York and Lerner sold to Lorning the identical property it had acquired on March 2, 1937, including the right of way and servitude for a consideration of $20,000. Contemporaneously with the execution of the act of sale between the parties, a lease agreement and an option to repurchase was executed between Lerner and Lorning covering the same property. The lease was for a term of ten years at an annual rent of $1,200, or 6% per annum on the consideration paid by Mrs. Lorning when she purchased the property. The agreement also provided that Lerner, the tenant, was to pay all assessments and taxes assessed against the property during the term of the lease, carry fire insurance and pay the premiums thereon, as well as public liability and property damage in favor of Mrs. Lorning. Lerner was given the option of repurchasing the property from Mrs. Lorning at any time after May 1, 1954, before the termination of the lease for the same consideration of $20,000 which Mrs. Lorning had paid, and Mrs. Lorning was given the right and option during the same period to require Lerner to purchase the property from her for the same amount during the term of the lease.
The plaintiffs contend that this contract is a security instrument and was executed in New York and was not such a sale as to come within the provisions of Articles 2652 and 2653 of the LSA-Civil Code, and at no time did it convey a transfer of a litigious right as provided for in these Articles of the Code.
Article 2652, LSA-Civil Code, reads:
“He against whom a litigious right has been transferred, may get himself released by paying to the transferee the real price of the transfer, together with the interest from its date.”
And Article 2653, LSA-Civil Code, defines a litigious right to be:
“A right is said to be litigious, whenever there exists a suit and contestation on the same.”
The plaintiff opposes this defense of the defendants on two grounds: First, that the transaction was simply a loan and the two instruments construed together show that it was a security device; and second, that the defendants having failed to comply *496 with the legal requirement of paying to the substitute plaintiff the real price of the transfer, together with interest from its date, at the time it first learned of the substitution and transfer on August 21, 1951, when service was made on defendants’ counsel of the amended petition to substitute Mrs. Lorning as a party plaintiff or from an examination of the public records when the instruments were filed. Plaintiff urges that the offer to redeem was made eighteen months after defendants learned of the transfer.
We will examine these two grounds in opposition to the alternative demands urged by defendants in the order stated.
We have carefully read the two contracts executed by Lerner and Mrs. Lorning with the view of determining whether they are to be considered as a sale actually transferring the title to the property or as a security contract as held by the Lower Court. If the instruments are in effect only a security device, then an actual conveyance of the property did not take place, and, of course if the property was not actually conveyed, then the litigious redemption provided for in Article 2652 would not apply.
Our careful examination of the instruments shows that Lerner or its nominee was given the option to purchase the property at any time between May 1, 1954 and the day the lease terminates by giving Lorning not less than sixty days’ prior written notice of its exercise of such option, the sale or purchase price to be for the total consideration of $20,000, and Lorning had the option to require Lerner to purchase the fee ownership of said' property at any time during the period in which Lerner had to require Lorning to sell the fee as provided in the paragraph of the lease by giving Lerner sixty days’ prior written notice of Lorning’s exercise of such option, such sale and purchase to 'be for the consideration and upon the terms and conditions in this section hereinabove set forth.
A redemption clause in a contract of sale is defined as:
“The right of redemption is an agreement or paction by which the vendor reserves to himself the power of taking back the thing sold by returning the price paid for it.” LSA-C.C. 2567.
If these instruments had only contained the clause in favor of the vendor, Lerner, to repurchase the property, then the instrument could be construed as a sale with the right of redemption and would have passed a defeasible title to Lorning which would have become indefeasible when Lerner-failed to exercise the option within the redemptive period. The contract goes further than that and provides that Lorning has the option to compel Lerner to purchase the fee ownership of the property at any time during the period in which Lerner may require her to sell the' fee to it for the consideration of $20,000. In construing the two acts together, we have to decide whether they constitute a sale of land with a right of redemption (vente a remere) or a pignorative contract (common-law mortgage).. The Supreme Court of this'State has declared that the difference between these two types of transactions is that in sales with the right of redemption, the purchaser becomes the owner of the property sold, subject only to the right of the vendor to reacquire the property. LSA-C.C. 2567, 2575 to 2578. Whilst in pignorative contracts, the nominal vendor continues, to be the owner, and the nominal purchaser has only a pledge or mortgage for his debt which he must- enforce in the usual way. Latiolais v. Breaux, 154 La. 1006, 98 So. 620, 621.
Under the terms of the two instruments evidencing the sale, lease agreement, together with the options, Lerner could exercise, as found by the Lower Court, all of the rights of ownership and continued in actual corporeal possession of the property.
Quoting further from the decision in the cited case, Latiolais'v. Breaux, supra, we find that the Court stated:
“The leading case on the subject is Marbury v. Colbert, 105 La. 467, 29 So. 871. That case lays down the rule *497 that — ‘redeemable sales of immovable property, unaccompanied by delivery of the thing sold, will be considered, as between the parties, in the absence of evidence to the contrary, as mere contracts of security, and the vendee out of possession may take this position equally with the vendor.’ It was further laid down that in order to constitute a real sale the vendee must not only take actual possession, but must also have given ‘reasonably adequate consideration.’ ”
In the case we have at hand, Mrs. Lorning had the right at her option to compel Lerner to repurchase the property at any time during the period Lerner had a right to redeem the property. In view of the stipulations contained in the two instruments, it is our opinion that they are to be construed as a pignorative contract or merely a security device.
“ ‘The right of redemption is an agreement or paction, by which the vendor reserves to himself the power of taking back the thing sold by returning the price paid for it.’ Civ.Code art. 2567.
“ ‘If that right has not been exercised within the time agreed on by the vendor, he can not exercise it after-wards, and the purchaser becomes irrevocably possessed of the thing sold.’ Civ.Code, art. 2570. .
“ ‘The time fixed for the redemption must be rigorously adhered to; it can not be prolonged by the judge.’ Civ. Code, art. 2569.
“These articles of the Code and numerous decisions, among them being Foster v. Carnes, 177 La. 99, 147 So. 697, are cited in support of defendant’s contentions.
“Articles 2569, 2570, and the cases cited would support defendant’s contention if the contract between the parties came within the meaning of article 2567 of the Civil Code, which defines a sale with right of redemption. But the contract here involved is not of that character.
“A sale with right of redemption is one by which the vendor reserves to himself the power of taking back the thing sold by returning the price within a specified time. But he is not bound to take it back. He may exercise his option to take the thing back if he chooses to do so, but the vendee cannot compel him to exercise that option. If he fails to exercise his right the vendee becomes ‘irrevocably possessed of the thing sold.’ ” First National Bank of Ruston v. Canal Bank & Trust Co., 181 La. 445, 159 So. 711, 713.
“A contract of security may be' in the form of a sale.” Ford v. Parsons, 142 La. 1093, 1094, 78 So. 128, 129.
The sale in our case was made subject to the terms and conditions of the lease and optional agreements contained therein.
The other ground urged by the plaintiffs why the defendants can not exercise their right of litigious redemption is because their tender was only made alternatively and eighteen months after they had had full knowledge of the transfer and was not timely. The District Judge did not pass upon this ground. We will consider it here. Defendants sought a trial on the merits of the case on the main defenses urged by them and resorted to the redemption privilege accorded them under Article 2652 of the Code only in the event the Court should not maintain their main defenses to the suit, that is, abandonment, non-use and prescription.
We quote from Louisiana Law Review, Vol. 1, page 827:
“Timely Exercise of the Redemption. The Louisiana jurisprudence construing Article 2652 has adopted á strict view requiring the redemptor to act with diligence in exercising the redemption. Thus it is well settled that a person entitled to invoke litigious redemption may not fight the case on its merits until it is apparent that the case is lost and, at the last moment, ex *498 ercise the redemption. Some of the French commentators indicate that the redemption may be exercised at any time before judgment and that it may be invoked even on the eve of the adjudication that will terminate the litigation. The stricter Louisiana rule, which requires prompt and timely exercise of the redemption, seems preferable. Although, as a general rule, redemption must be exercised before the termination of the litigation, an exception must be recognized when the transferee has kept the transfer a secret or off the records for the purpose of avoiding redemption.”
See also Tulane Law Review, Vol. 13, page 453.
This tender was not made until February 9, 1953. The fact that the tender was only made alternatively and eighteen months after defendants were apprised of the transfer, and defendants did not establish the true value of the servitude over the property, it is our view that under the evidence the consideration was inadequate and the tender was not timely made. The burden was on defendants to establish the value of the servitude was only $50. Headlee v. Martin, La.App., 25 So.2d 320.
We are guided in this conclusion by what the Court held in Leftwich v. Brown, 4 La.Ann. 104:
“The law per diversas and Ab Anas-tasio C. Mandate, on which the articles of our Code concerning litigious rights are founded, have no other object than the prevention of unnecessary litigation, which is attained in a great measure by the check they impose on the cupidity of speculators in law suits. They enable the defendant to take the place of the purchaser of the suit against him by paying the price he has paid for it, with interest. Thereby the litigation is ended, and the object of the law attained. But if as the defendant has done in this case, he continues to contest the suit, raises difficulties as to the right of the plaintiff to recover his debt and protracts the litigation, he evidently defeats the very object of the law, and cannot avail himself of the provision which the law has established in his favor for the purpose of terminating litigation. To permit him to do it would be to defeat the very object of the law. Pothier, Contrat de Vente, 596-597. Merlin, Rep. Verbis Droit litigeux.”
“It has repeatedly been held by the Supreme Court of Louisiana that the purpose of Article 2652 was to prevent litigation and therefore a defendant who, instead of paying the price of the transfer, contests the suit and prolongs the litigation, defeats the very object of the Article and cannot exercise the privilege it gives. The complainant should have paid or tendered to Hernandez the real price of the transfer with interest from date. He would then have been in a position to claim the benefit of Article 2652.” Cucullu v. Hernandez, 103 U.S. 105, 117, 26 L.Ed. 322.
“Further, the record shows that the defendant has not availed himself, of the privilege to substitute himself to the purchaser of a litigious claim against him by tendering the real price of the purchase. He should have actually tendered or deposited the price and ceased all litigation with the inter-venor.” Pearson v. Grice, 6 La.Ann. 232.
For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellants.