6   232
e110 902

## MARTHA ANN PEARSON *v.* WARREN A. GRICE, Executor.*

In the inheritance of successions amongst collateral relations, the nearest in degree excludes all others ; and if there are several in the same degree, they partake equally. C. C. 910.

The propinquity of consanguinity is established by the number of generations, and each generation is called a degree. C. C. 885.

In successions falling to collateral relations, there is no distinction between those of the whole blood and those of the half blood : they share alike.

A joint proprietor, or heir, or co-parcener, can maintain a petitory action for the whole undivided property, against a mere possessor without title.

A right is litigious only where there exists a suit and contestation on the same. C. C. 2623. C. C. 3522, § 22.

The defendant who wishes to avail himself of the privilege of paying the plaintiff the price at which a litigious right has been purchased, must actually tender or deposit the amount and cease all litigation as to the existence of the right.

APPEAL from the District Court of Concordia, *Farrar*, J. *Stacy* and *Sparrow*, *Bullard* and *Frost*, and *Ogden*, for plaintiff. *R. H. Marr*, for intervenor. *A. Hennen*, for defendant. The judgment of the court was pronounced by

ROST, J. The only question presenting any difficulty in this case, and the only one in relation to which we differ from Mr. Justice Preston is, whether the

---

* A statement of this case will be found in the dissenting opinion of *Preston*, J.

intervenor, who is the sister of the half blood of the father of the deceased, is entitled to share her succession equally with the plaintiff, who is a sister of the whole blood of the mother of said deceased.   Article 910, C. C., provides, that among the collateral relations, he who is the nearest in degree excludes all the others; and if there are several in the same degree, they partake equally and by heads, according to their number.

The propinquity of consanguinity is established by the number of generations, and each generation is called a degree.   Art. 885.

The language of these articles is free from ambiguity, and the plain import of the words used applies equally to relationship of the half blood and of the whole blood.   But for the discrimination which art. 909 makes in favor of brothers of the whole blood, their interpretation could never have presented any difficulty. But that article provides, that when brothers and sisters of different marriages are called to an inheritance, the succession is equally divided between the paternal and maternal lines of the deceased; that the german brothers and sisters take a part in the two lines, while the paternal and maternal brothers and sisters take a part in their respective lines only.   And it is contended, that, by analogy, the rule should be extended to all collateral relations, and applied to the present case.   It is urged in support of that view, that it was provided in the Old Code, that the prerogative of the whole blood existed only in favor of the brothers of the whole blood of the deceased, and of their children, to the exclusion of brothers of the half blood, but that it extends no further; and that as this limitation has been left out of the New Code, it is a fair presumption that the Legislature intended the prerogative in favor of the brothers, to be extended to all collateral relations.

Under our system of jurisprudence, blood is not the foundation of the right of inheritance in collateral successions; neither is it now in England, under the statute of distributions.   With us, the law which defers successions to all the relations of the deceased nearest in degree, is the general rule, and is a law of public order.   The prerogative established in favor of brothers of the whole blood, is an exception to that general rule, and, like all other exceptions, is *stricti juris.*   It would be subversive of all principles of jurisprudence to extend it to other persons than those to whom it has expressly been granted. The suppression of the limitation found in the Old Code could not have had the effect of converting the exception into the rule, and the circumstances under which it was made negative any such intention in the Legislature.   The only reason given for it in the projet is, that the changes introduced in the New Code, in the succession of ascendants, had introduced such modifications in collateral successions that it was found necessary to suppress all the articles of the Old Code treating of collateral successions but one, and to replace them by others more in harmony with the new legislation introduced.   Ten articles were accordingly suppressed, one of which was the one relied on.   It was left out without any reference to the question under consideration, and no doubt because the disposition it contained is found in substance in art. 910 of the New Code.

The new articles adopted were all taken from the code of France, under which it is considered elementary, that in collateral successions the proximity of the degree is alone to be looked to, without regard whether the relationship to the deceased is of the whole or of the half blood.   Toullier, vol. 4, book 3, tit. 1, No. 224.   Duranton, vol. 6, b. 3, tit. 1, Nos. 150, 256.   Marcadé, vol. 3, b. 3, tit. 1, p. 61.   Vazeille, Successions, vol. 1, pp. 35, 66, 67, and notes.   12 Sirey, part 2, p. 197, *Héritiers Corbisier.*

PEARSON
v.
.GRICE.

This has been a fundamental principle of the Civil Law since the promulgation of the 118th Novel of Justinian. It was, and still is the law of Spain and of France, and we are at a loss to conceive how it could have been enacted in more express or clearer terms than it has been in art. 910 of the code. Domat, vol. 2, law 2, tit. 3, pp. 465, 470, 471. Gregorio Lopez in sexta partida, tit. 13, law 5, No, 1. Febrero, b. 2, ch. 9, de los herederos ab intestato, pp. 417, 421.

We are of opinion that the judgment should be affirmed. It is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed, with costs.

PRESTON, J., dissenting. *Nancy Neale Jones* departed this life in the parish of Concordia, on the 29th of August, 1849, leaving a large estate in land and negroes. The day before her death, she signed a private writing, which was, by the clerk of the parish, admitted to probate as her will. *Warren A. Grice* was qualified as her testamentary executor, and letters of executorship delivered to him. He is also tutor of *Mary Louisa Grice,* the universal legatee, and. of several minors to whom particular legacies were given. The writing purporting to be her will was not written by the testator, nor is it signed by any witnesses. It is not an olographic will, because not entirely written, dated, and signed by the testator. It is not a nuncupative will, under private signature, because not executed in the presence of the witnesses, nor in the manner required by law. It is, therefore, null and void, by article 1588, of our Code, if there be heirs of the deceased entitled to have its nullity declared by judgment.

*Martha Ann Pearson* alleges that she is the aunt of the deceased, and her only heir, being the nearest relative she left at her death. She claims, that the will be annulled, and the whole estate delivered to her. *Sarah Ashford* has intervened, and alleges that she is the aunt of the deceased, and her only heir, and that the plaintiff is not an aunt. The executor and tutor denies that either are aunts, and alleges that the deceased died without any relations.

A great deal of testimony has been offered by the plaintiff and intervenor, to establish the relationship to the deceased respectively claimed by them. Much of it was objected .to by the defendant, and for various reasons and exceptions taken to its admission. Thus, the deposition of *Mary H. Brockington* was opposed because no *procès verbal* was made of the manner of executing the commission and taking her testimony, as required by the 433d article of the Code of Practice. And we think it should have been rejected. Some of the commissions were accompanied by interrogatories which might strictly be considered leading interrogatories, the answers to which were objectionable on that account. And hearsay testimony was admitted, beyond what strictly the rules of evidence would allow even with regard to pedigree, as to which the rules of evidence have been so greatly relaxed.

But there is ample evidence in the record to establish the relationship claimed by the plaintiff and the intervenor, independently of all that which is objectionable. Thus, the deceased caused a letter to be written to a nephew shortly before her death, in which she fully recognized the plaintiff to be her aunt. The deceased also made many inquiries of another nephew, *Benjamin F. Rogers,* of this State, in relation to the plaintiff, as her aunt, and reciprocal inquiries were made by the aunt as to her niece. The deceased in effect acknowledged the same thing to the witness *Whitaker;* and in fact the relationship which existed between her and the plaintiff is proved by the personal

knowledge of *Mrs. Powe*, and several other witnesses examined in South Carolina under a commission.

*Mrs. Ashford*, the intervenor, has been equally successful in proving that she also was an aunt of the deceased, on the father's side, both by the acknowledgments of the deceased and by many witnesses.

It is proved by connexions of the deceased, that she died without ascendants or descendants, brothers or sisters, or their descendants. If there were any doubt on this subject, it would be removed by the testimony of several witnesses offered by the defendant himself, to prove that the deceased had no relations. And this would also remove all doubt, if there were any, that all the uncles and aunts of the deceased, except the plaintiff and intervenor, were dead. And even if there were others, the district court was correct in instructing the jury that a joint-proprietor, or heir, or coparcener, can sue and maintain a petitory action against a mere possessor without title, for the whole undivided succession or property. 3 L. R. 164.

Being perfectly satisfied by evidence that is unquestionably legal, that the plaintiff and the intervenor were, as they allege, aunts of the deceased, we cannot think of remanding the cause for another arduous trial, because some illegal evidence has been admitted, and may have operated on the minds of the jury. So far as the verdict establishes the heirship of the claimants, we are satisfied that truth has prevailed and justice has been done. The plaintiff and intervenor have, therefore, the right to have the will of the deceased annulled, and to recover her whole succession from the defendants.

But a new and difficult question is presented by the plaintiff and the intervenor, as to the proportions in which they are entitled to share the inheritance of their deceased neice. The testimony shows, that the plaintiff was the full sister of the mother of the deceased, and that the intervenor was but the half sister of her father. The plaintiff, being the aunt of the whole blood, contends, that her relationship was nearer to the deceased than an aunt of the half blood, and that she is entitled to inherit the whole succession. The intervenor, on the other hand, insists, that she was as near in the degree of relationship to the deceased as the plaintiff, and that they should share the succession *equally*. The intervenor invokes article 910 of the Civil Code; the plaintiff, that and the preceding article. Their respective counsel have referred to other articles of the code, and have favored us with very able arguments on both sides, having in their investigations made great researches into the Roman, Spanish, French, and English jurisprudence on the subject.

The principles and decisions invoked have depended very much upon positive enactments as to the rights of brothers and sisters of the whole or half blood. And we cannot say, from an examination of the authorities cited, that there has been a fixed and permanent rule in any of those systems of jurisprudence, which would govern the rare contingency that has occurred in the present case. We find provisions and decisions by which the relations of the half blood, though in the same degree, have been excluded entirely by those of the whole blood, and others by which they have been admitted to an equal participation in the inheritance. Even in this State there has been changes of legislation on the subject. Under the Old Code, the brothers and their children of the whole excluded entirely the brothers and their children of the half blood; but it was expressly provided that the preference given to the whole blood should extend no further. Therefore we are to conclude, that among more remote collaterals those of the half blood would have inherited equally with those of the whole blood in the

PEARSON
*v.*
GRICE.

same degree, under the Old Code, p. 154, art. 39. But the whole article was omitted in the New Code; thus expressly repealing the limitation of the preference, and, in place of the whole, substituting article 909 of the New Code.

The following clause of article 910 of the New Code, on which both parties rely, is the only clause of the whole chapter on collateral successions in the Old Code which has been preserved: "Among the collateral relations, he who is the nearest in degree excludes all the others; and if there are several in the same degree, they partake equally and by heads according to their number."

In the Old Code, it was the necessary consequence of the principle established immediately before, that brothers of the whole blood should exclude brothers of the half blood with this express limitation, "The prerogative of the whole blood exists only in favor of the brothers of the whole blood of the deceased, and of their children, to the exclusion of brothers of the half blood; but it extends no further."

But in the New Code this clause as to collateral relations was retained, with a new principle governing the inheritance from a deceased brother by brothers of the whole and half blood, and their descendants; which in effect regulates their shares in the inheritance in proportion to the quantity of the same blood with that of the deceased which flows in their veins. The principle was not expressly extended to more remote collaterals; yet it was not like the principle in the Old Code, expressly limited to brothers and their children. On the contrary, this limitation was repealed by being omitted. In a word, the Legislature did not contemplate or provide for the case before the court, so unlikely to occur, that it was not anticipated. It is, therefore, the duty of the court to exercise the power given by the 21st article of the Code, when the law is silent; and in interpreting article 910, to derive the best light we can from nature, reason and the analogies and usages of our law. We think they lead to a middle course between the pretensions of the parties in this case.

The aunt of the half blood is a relation as near in degree as an aunt of the whole blood; but she is as near by one parent only. She is not as fully related, because the aunt of the whole blood, though standing in the same degree of relationship, is doubly related through both father and mother. The laws of nature, therefore, seem to render us more dear to an aunt of the full blood, and she to us, than to an aunt of the half blood, though in the same degree of relationship.

The connexion of blood is the natural basis of inheritance. *Mrs. Pearson* is the daughter of two grand-parents of the deceased; *Mrs. Ashford* is the daughter of but one. The blood of two grand-parents flows in the veins of the plaintiff; the blood of but one in the veins of the intervenor. The claim of the former, on account of the totality of her blood, to inherit more from her neice than the latter, on account of her partial blood, seems to be strongly founded in nature.

So, consulting our reason, we are to consider that the laws of inheritance are founded much upon the principles of reciprocity. Had *Mrs. Pearson* died, leaving her parents as her only heirs, her whole fortune through them might have been inherited by *Mrs. Jones*. Had *Mrs. Ashford* died, leaving her father and mother her only heirs, half her fortune would have ascended to her mother and half to her father, the grand-father of *Mrs. Jones*; which half alone could have descended to the latter. So, if *Mrs. Pearson* had died, leaving as her nearest relation her neice, *Mrs. Jones*, the latter would have inherited her

whole estate, to the exclusion of a step-daughter of her sister by the father of Mrs. Jones, and of course her half sister. On the other side, if Mrs. Ashford had died, leaving her nearest relations, Mrs. Jones and her half sister, they would have inherited her estate equally. So that Mrs. Jones, under the same circumstances precisely, would inherit the whole estate of her whole aunt, and but half the estate of her half aunt. It is but just and reasonable, therefore, that her aunts of the whole and of the half blood, being her only heirs, should inherit her estate in the same proportions, and that Mrs. Pearson should have double as much as Mrs. Ashford.

The analogy of our law, in the case of the whole and half brothers of a deceased brother, is conclusive. The estate being equally divided between the paternal and maternal lines of the deceased, his german brother takes a part in both lines; his half brother in one line alone. I can see no reason for giving brothers of the whole and half blood, and their children, portions of the succession of a deceased brother in proportion to the blood they inherited in common with the deceased, which does not equally apply to more remote collateral relations. The two cases are precisely analogous. The Legislature have given us a fixed rule in the one case; the reason of the rule applies with all its force to the other cases. And if we adopt it, we follow a rational rule which will apply to, and govern with uniformity, every possible case that can arise. If we reject it, we are without any rule given by the Legislature, and the cases that may occur must be left to the uncertain discretion of the courts; which appears to have been much exercised by them in England, as well as by the tribunals under the jurisprudence of Rome.

The whole section of our code, as to the successions of collaterals, must be interpreted together; and the fair construction of the whole as applied to the present case, is, that the plaintiff, being the aunt of the whole blood, inherits twice as much of the succession of her deceased neice as the intervenor, being the aunt of the half blood—the one having twice as much as the other of the same blood which belonged to the deceased.

The defendant alleges, that having discovered in the progress of the trial that Mrs. Ashford had sold her rights in the succession to George R. Price for $10,000, upon certain conditions, he tendered the price to him, under article 2622 of the Civil Code, in order to obtain a release to him of her rights and those of the transferree, because he had purchased a litigious right from which the defendant was entitled to be released on paying the real price of the purchase. But it appears that Mrs. Ashford sold her rights to George R. Price on the 24th day of January, 1850, and he did not file her intervention, claiming her interest in the estate, until the 21st of March following.

The article of the code invoked is found in the chapter upon the contract of sale, and is immediately followed by an article declaring that a right is said to be litigious whenever there exists a suit and contestation on the same. The two articles must have reference to and govern each other. The right of Mrs. Ashford in the succession before she commenced suit or intervened to assert the same, was not therefore a litigious right. It is true, the last article of our code in defining the terms used in the code, declares that litigious rights are those which cannot be exercised without undergoing a law-suit. The two articles are not inconsistent. The impossibility of exercising the right without undergoing a law-suit is never certainly ascertained until the law-suit is commenced. Before its commencement, it is to be supposed that if the claim be just, the person against whom it is made will do justice by according it to the

claimant without suit; or that he will at least arbitrate or compromise the matter, and that the claimant will not be forced to a law-suit. It is only when forced to commence a law-suit, that it is ascertained that the claim cannot be exercised without undergoing a law-suit, and it becomes a litigious right by the commencement and existence of the law-suit. And when that misfortune for the defendant occurs, the law beneficently allows to him the preference in purchasing in order to buy his peace. This court has, therefore, uniformly refused to avoid the sale of a thing on the ground that it was a litigious right, unless suit had been brought to enforce the right at the time of the sale. 2d Ann. 60. Ib. 79. 3d Ann. 554.

Further, the record shows that the defendant has not availed himself of the privilege to substitute himself to the purchaser of a litigious claim against him by tendering the real price of the purchase. He should have actually tendered or deposited the price and ceased all litigation with the intervenor. He has done neither; on the contrary, has contested the rights of the intervenor as zealously since as before the apparent offer to purchase them. See the case of *Leftwitch et al.* v. *Brown*, 4th Ann. 104, in which it was held, that under such circumstances the defendant was not entitled to the privilege of releasing himself by paying the price of the purchase. We adhere to that decision in the present case.

The answer of the intervenors to the plaintiff's objection that they cannot maintain their intervention, having sold their rights, is conclusive that the agreement required them to bring suit in their own names to establish their rights, they agreeing to convey to *Price* whatever might be recovered in the suit. I am therefore of opinion, that the judgment of the district court, as to the defendants, should be affirmed; but that the judgment as between the plaintiff and intervenor should be reversed, and that the plaintiff should recover two-thirds of the succession of *Nancy Neale Jones* from the defendants, and the intervenors one-third of the succession.

## SAME CASE—ON A RE-HEARING.

ON the petition for a re-hearing, the judgment of the court was pronounced by EUSTIS, C. J. It is ordered, adjudged and decreed, that the plaintiff and *Warren A. Grice*, the executor, each pay one-half of the costs of the appeal.