## No. 13,691.

## DAVID McG. MEANS, RECEIVER, vs. ROSS, KEEN & CO.

### SYLLABUS.

1. Defendants were employed by the plaintiff to obtain a cargo for the British ship Bombay. After part of the service had been performed, the employers failed. Although they had failed, defendants could not terminate their agency, put an end to the service partly performed, and become the employes of a third person to the contract between them and their principal.

2. The question of reopening the testimony and admitting new evidence is largely left to the discretion of the *nisi prius* court.

3. The accounting due by the agent to his principal does not fall within the prescription of three years.

4. The facts do not sustain the charge that plaintiff's claim is a litigious one.

5. Defendants admit having received an amount (stated) from the owners of the vessel. This amount, by the terms of their agreement with the charterers of the vessel, is due to the charterers, less their charges and commissions. The total amount due of the charges and commissions having been fixed, they were deducted from the amount defendants collected from the owners of the ship.

APPEAL from the Civil District Court, Parish of Orleans— *Ellis, J.*

---

*Denegre, Blair & Denegre,* for Plaintiff, Appellee.

---

*Guy M. Horner,* for Defendants, Appellants.

---

The opinion of the court was delivered by

BREAUX, J. Plaintiff seeks to recover the sum of four thousand dollars with interest, on the ground that defendants, agents of Latassa & Co., charterers of the ship hereafter named, of which firm he is the receiver, also the assignee, have collected the sum of eight thousand

seven hundred and thirty-four 45-100 dollars and are indebted for the amount thus collected less charges and commissions.

The firm of Latassa & Co. employed the defendant firm to get a cargo for the British ship Bombay, then bound on a voyage in ballast from Philadelphia to New Orleans. The usual compensation was to be paid for this service. The cargo was obtained and was carried to Liverpool, the port of destination. The freight was earned and the portion collected by the defendants of this freight, to which plaintiff claims Latassa & Co. was entitled, less charges and commissions, is the amount involved here.

Defendants interposed an exception to plaintiff's demand, pleading the prescription of three years and the litigiousness of the claim. The plea of prescription was overruled. The plea of "litigious right" was referred to the merits.

Defendants, while admitting that they collected for freight as before stated, deny that they ever collected any amount for Latassa & Co. Their account of the business as set forth by them is that in 1887, they were employed by the firm of Latassa & Co., through a broker in New York, to obtain a cargo for the British steamship Bombay of which Latassa & Co. were the charterers; that they did obtain the cargo and, while the ship was taking on this cargo, they made the necessary disbursements; that the charter party of the ship was about to expire and that, with the view of securing themselves, they took bills of lading signed by the captain of the ship; that on the return of the Bombay to Liverpool, her charter to Latassa & Co. having expired, her owners did not honor the bills of lading held by the defendants. The owners, after having dishonored the bills of lading, took the cargo, delivered it, and collected the freight for their own account and failed to pay defendants; that one of the defendants went to England in quest of a settlement and, while there, placed the firm's claims in the hands of Gilchrist & Co., shipbrokers, who failed to bring about a settlement, but that they succeeded in obtaining the amount due by libelling the steamship Florida, another vessel owned by the owners of the Bombay. The amount was collected through Gilchrist & Co., to whom the owners paid in order to obtain the release of the Florida; that Gilchrist & Co. retained a stated amount for expenses, viz: one hundred and seven 58-100 dollars. After deducting this amount, the amount collected by defendants was eight thousand five hundred and fifty-three 18-100 dollars. In order to collect this amount,

they aver that they were compelled to furnish a written guaranty to the owners of the Bombay against any counter claim for the money paid to them. Defendants charge, as per their account, amounts to the extent of nine thousand seven hundred and sixty-four 68-100 dollars due, they say, by the steamship Bombay. Latassa & Co. not having paid anything, defendants claim against them in reconvention a sum of one thousand two hundred and eleven 50-100 dollars, as still due and for which they, in this suit, ask for judgment.

To their petition, plaintiff had annexed interrogatories on facts and articles which were propounded under an order of court. The defendants answered the interrogatories, setting forth the facts connected with the business transactions of the parties in interest. The answers were substantially the same as the summary above made of their defense.

The evidence was heard and the case was continued to be argued on some day following. We are informed by the record that at the argument, the plaintiff offered in evidence the commercial books of the defendant firm. The defendants objected on the ground that the offer was not seasonably made, and also because books of the defendants should not be admitted in evidence without giving them an opportunity to prove the entries as being correct. The books were admitted over defendants' objection.

The judgment of the District Court is in favor of the plaintiff for one thousand and ninety-two 12-100 dollars, with interest, and reserving to plaintiff the right to demand from defendants the return of such parts "of an item numbered 28, $2053 ,herein allowed, as may be composed of profits made by defendants." In arriving at the conclusion that plaintiff is entitled to the amount just stated, the learned judge of the District Court rejected certain items of defendants' account and allowed other items claimed. The defendants set up that no item should have been rejected, and further claim that they have a right to the four hundred and forty-one 40-100 dollars commission specially claimed by them in their reconventional demand for their guaranteeing the owners of the Bombay as before stated.

We think it was within the discretion of the District Court to admit the defendants' books in evidence. We do not understand that the argument had commenced. It is not shown that the defendants were illegally prejudiced by the order admitting their own books in evidence. When the case was argued here, it was not suggested that the

case should be remanded in order to enable the defendants to explain the entries in their books. We do not think that the ruling was erroneous.

With reference to the objection urged by way of exception as relates to prescription, we deem it enough to say that the claim of the principal against the agent for an accounting was not prescribed. Such a claim is not barred by the prescription of three years pleaded. The freight had been earned for the account of Latassa & Co. It was theirs, subject to charges, in the hands of their agents for which the latter can be held, although three years have elapsed from the time that the amount was realized by them for account of their principal.

As relates to the litigious rights alleged as cause for defeating plaintiff's claim, we have not found that this plea is sustained by the facts. The claims transferred were not in suit. The possibility of a suit to recover an amount does not bring the right within the prohibition of Article 2622 of the Civil Code.

Whether or not the defendants were released from their obligation to account to Latassa & Co. for the amounts collected by them presents the first question of importance for our decision. Defendants had entered into agreements with Latassa & Co. as charterer of the vessel. For their services, under this agreement, they were to receive the usual compensation. When the vessel returned to Liverpool, the freight had been earned. The defendants were still acting for the charterer. They had no contract with the owners. The freight for the ship Bombay was engaged before the failure of the charterer. It had been, at least, collected together for the ship. The vessel was being loaded when defendants were informed of the failing condition of the charterer.

Defendants made advances for which they are entitled to compensation and they also have a right to remuneration for their services as agents. Having gone into possession of the vessel for the account of Latassa & Co., the charterer, it was not in their power to change the agency as they attempted, and to become the agent of the owner. The vessel had entered the port of New Orleans for account of the charterer, and we do not think that we should hold, although they failed in business, that their agents could, themselves, change the charter party from their principals to themselves.

All the items in defendants' account to number 23 were approved by the judgment of the District Court. We pass to the first contested item, No. 23, "river pilot and costs, $57.75." We are informed that a

double charge for extra pilotage is unusual. The services are limited to one pilotage. The charterer cannot be held for other pilot services growing out of personal contracts between defendants and another pilot who did not do the work, but had a right to charge because of some agreement between him and the agents by which he was to see to all their pilotage. In this case, it appears that the regularly retained pilot was not the first pilot who applied to render the service, entitled for that reason, under the law, to the work.

The next contested items are numbered 26, 27 and 37 and are for lawyer's fees for libelling ship Florida, one hundred dollars, and for costs for libelling the said ship, seventy dollars and fifty cents. The last item of the three just stated consists of personal expenses incurred by one of the firm who went from New Orleans to Liverpool for the purpose of settling the firm's account and protecting his firm's interests. While in Liverpool he placed the bills of lading of the firm in the hands of Gilchrist & Co., a firm of ship brokers doing business in that city, with instructions to collect the total freight and pay the amount due the ship and retain the balance to the order of his firm. Grouping these three items, the District Court considering the percentage of defendants' interest in the claim to that of plaintiff's, reduced the amount to one hundred and fifty dollars. With reference to these claims we insert an excerpt from the judgment of our learned brother of the District Court: "Defendants claim these as their expenses for collecting the eight thousand six hundred and sixty 75-100 dollars first above referred to. The facts on which they base this claim for extra the answers of Messrs. Ross to the interrogatories on facts and articles. the answer of Messrs. Ross to the interrogatories on facts and articles. Conceding the correctness of amounts and the facts stated, the adjustment of their account shows defendants entitled to seven thousand four hundred and eighteen 64-100 dollars of the eight thousand six hundred and sixty 75-100 dollars collected, while plaintiff's interest is one thousand two hundred and forty-two 12-100 dollars. The figures may vary in verification, but this is about the relative proportion of the interest of defendants and plaintiff in the sum of eight thousand six hundred and sixty 76-100 dollars. Argument is not needed to show that the defendants cannot charge the plaintiff with nine hundred and twenty-four 08-100 dollars, the entire cost of collecting eight thousand six hundred and sixty 75-100 dollars where plaintiff's interest in said eight thousand six hundred and sixty 75-100 dollars was a trifle in

excess of one thousand two hundred dollars and defendants' interest exceeds seven thousand four hundred dollars. We therefore strike out and reject these four items, 26, 27, 37, and the Gilchrist item ($107.58) stated as a debt on the credit side of the account and allow the defendants one hundred and fifty dollars as a fair proportion of the expenses of collecting."

In answer to the argument of the learned counsel for the defendants, that defendants could not, under the circumstances, avoid making the advances and incurring the risk, we think it sufficient to say that defendants were not in a position to ignore their principal, although it must be conceded that the principal should have advanced the amount, instead of leaving the burden on the defendants. The latter, however, accepted the burden without objection. They could not, in the manner, attempted, put an end to the agency. Having assumed the risk they must bear the burden and costs for recovering back the amount they chose to advance. It was their claim in part, and to the extent that it was they were liable for the largest part of the charges in question.

In the main, we agree with the opinion of our learned brother of the District Court. Under the circumstances, however, we think the amount allowed should be larger. True the interest of the plaintiffs was comparatively small. They, however, were to some extent concerned about the amount due the defendants. They had not furnished the sums required to enable defendants to continue with the work of loading the ship with the cargo which they had gathered for the voyage. We will fix the amount later in our opinion.

Item 29 was reduced to the amount defendants' books showed they had paid for compressing the cotton shipped. They were, under the circumstances, properly held bound by the entries in their books. It was the best evidence obtainable of the amounts due the defendants.

Item 30 was charged in defendants' books and, as reduced, was properly allowed. If freight brokerage is chargeable at all, we think of no good reason why it should be taken out of the commission of the ship's agent.

Item 31, inland charges, was reduced to the amount charged in defendants' books. These books were, we understand, kept at the time and are contemporaneous evidence and are binding. If other expenses were incurred, it is a loss for which defendants have themselves alone to blame.

Item 32, telegrams and cablegrams, was properly reduced to fifty dollars, the usual charge, as made evident by the testimony.

Item 33 was rejected. It was made for attendance to vessel's business in port. It appears that such charges are not usually made when vessels are loaded as this was, besides defendants, on appeal, do not, as to this item especially object to the court's action in rejecting the claim.

Item 34, commissions on freight, was reduced from five per cent. to two and a half per cent. The weight of the testimony sustains the last mentioned commission. The charterers spoke about the business of loading the Bombay to a ship broker in New York, who wrote to a ship broker's firm in New Orleans, who was, through the agency of the former, brought into business relations with the charterers, by whom the latter was employed. If the first broker was entitled to anything for his very limited services, it was from the commission of the broker employed. This afforded no ground for charging two commissions; one for the broker in New York and the other for the broker in New Orleans. The agreement was that the defendants were to charge the usual commission. The difficulties they had to meet in this particular instance are not grounds for increasing the commission originally agreed upon. The judgment will be amended so as to allow two and a half per cent. on the whole freight, which will amount to four hundred and thirty-two 75-100 dollars.

Item 36, one hundred and eighty-seven 03-100 dollars is rejected in the judgment. There was no written agreement regarding interest, therefore plaintiff was without right to charge a conventional rate of interest, but, in our view, he was entitled to the legal rate. It is therefore allowed, and, to that extent, also, the judgment is amended.

In our view defendants are without right to two and a half per cent. commission for "advancing" and two and a half per cent. for "disbursing"; one charge is allowed for both, to-wit: one hundred and sixty-nine 68-100 dollars, on the amount advanced.

Defendants are, in addition, entitled to five per cent. for ninety-eight days' interest on money in use for plaintiff. The sum so used amounted to six thousand seven hundred and eighty-seven 30-100 dollars, and the interest thereon amounts to the sum of ninety-two 38-100 dollars. This would increase the amount due to the sum of one thousand two hundred and twenty-nine 89-100 dollars, if we had not increased items 26, 27, and 37, as we have. We think that it is equitable to increase this group of charges by one hundred and thirty-seven 39-100 dollars and to let the decree remain as it is, as, in our view, it does substantial justice between the parties.

Defendants specially claim in their reconventional demand a commission of four hundred and forty-one 40-100 dollars for a temporary obligation incurred by them in order to collect the amount due. We have seen that it was in nature a guarantee to protect the owners of the ship from all claim for the amount they collected from them.

Such services, particularly under the circumstances here, are quite exceptional. The value was not shown. We would be at a loss to fix the amount of the commission if we were to conclude that a commission is due. It is not. It was perhaps attended with some little risk. But defendants more than any one else were interested in taking this risk.

For reasons assigned the judgment is affirmed.

Rehearing refused.