## MOHAWK OIL CO. v. LAYNE.

(District Court, W. D. Louisiana. February 4, 1921.)

### No. 110.

1. **Mines and minerals ☞78(1)—Holder of lease not chargeable with failure to develop where third party developed under contract with both parties.**

   Where the holders of oil leases covering the same land joined in a contract with a third party permitting him to develop the property and hold the proceeds until the termination of litigation between the lessees, the holder of the later lease could not be charged with a failure to develop the lands, and it was wholly immaterial which party took the initiative in making such contract.

2. **Champerty and maintenance ☞6(2)—Oil lease given pending suit to annul earlier leases not "litigious right."**

   Under Civ. Code La. art. 3556, § 18, and article 2653, relative to litigious rights, and article 2652, authorizing the party against whom a litigious right is transferred to release himself by paying the price of the transfer-

with interest, an oil lease made by the owner of land while a suit was pending to annul an earlier lease was not a "litigious right" which the earlier lessee could purchase by paying the amount paid with interest.

[Ed. Note.—For other definitions, see Words and Phrases, Litigious Right.]

**3. Champerty and maintenance ⬷6(2)—No right "litigious" unless involved in litigation.**

Under the law of Louisiana, no right is "litigious" unless it is actually involved in the litigation.

**4. Champerty and maintenance ⬷6(4)—Offer to purchase alleged litigious right does not inure to one claiming under the offerer.**

Where the holder of an oil lease offered to pay the holder of a subsequent lease the amount paid by him for the lease with interest on the theory that it was a litigious right within Civ. Code La. art. 2652, the offer did not inure to the benefit of one subsequently purchasing the earlier lease from the party making the offer.

**5. Champerty and maintenance ⬷6(5)—Right to purchase litigious right must be exercised without undue delay.**

Under Civ. Code La. art. 2652, relative to the right of one against whom a litigious right is transferred to relieve himself by paying the price of the transfer with interest, he must in due time and without unnecessary delay elect to exercise the right or option conferred.

**6. Champerty and maintenance ⬷6(5)—Right to purchase litigious right not lost by agreement between parties and a third person.**

Where the holders of oil leases covering the same property entered into an agreement with a third person for the development of the property, the proceeds to be held until the termination of litigation, and the agreement provided that it was made without prejudice to the rights of either party under their respective leases, any right which the holder of the earlier lease had to purchase the other's lease as a litigious right under Civ. Code La. art. 2652, was thereby preserved.

**7. Champerty and maintenance ⬷6(5)—Earlier lessee not entitled to purchase subsequent lease as litigious right after discovery of oil and accumulation of large profits.**

Where parties holding oil leases on the same land entered into an agreement with a third party for the development of the land, the proceeds to be held until the termination of litigation and the holder of the earlier lease made no offer to buy out the subsequent lessee until oil had been discovered, and profits exceeding $183,000 had accumulated, it was too late to attempt to purchase the subsequent lease as a litigious right under Civ. Code La. art. 2652.

In Equity. Suit by the Mohawk Oil Company against Mrs. Eula S. Layne. On hearing on the merits. Decree for defendant.

Hall & Bullock and Wilkinson, Lewis & Wilkinson, all of Shreveport, La., for plaintiff.

Thigpen & Herold and Barret & Files, all of Shreveport, La., for defendant.

## On the Merits.

JACK, District Judge. After denial of the motion to dismiss (270 Fed. 841), the case was submitted on its merits on an agreed statement of facts, substantially in accordance with the facts as alleged in plaintiff's petition as set forth in the foregoing opinion of the court; the pleadings having been so amended as to convert the suit into one to

clear a cloud from plaintiff's leases, resulting from the recordation of the Layne leases and the latter's claim thereunder.

Plaintiff bases its attack on the Layne leases on the same grounds on which it averred in its original petition it could have contested Layne's claim had it been given an opportunity to do so, that is to say, first, that the Layne leases lapsed because of the failure of the lessee to commence work within the time stipulated, or to pay the extension rentals as provided in the contracts; and, second, that Layne, by such leases, acquired a litigious right, and that plaintiff is entitled to avail itself of the provisions of article 2652 of the Civil Code, providing that—

"He against whom a litigious right has been transferred, may get himself released by paying to the transferee the real price of the transfer, together with the interest from its date."

On February 5, 1919, plaintiff's author, Brown, wrote Layne stating that he desired to avail himself of the provisions of the law relative to litigious rights, and that he stood ready to repay to him the amount which he (Layne) had paid for the leases, if he would state what that amount was. It appears that the cash consideration paid for the leases by Layne was $2,440, but that he had, in addition, agreed to pay the fees of the attorneys who had brought the suits for Herndon and Raines against Dunson et al., and, the amount of such fees being unknown to Brown, plaintiff avers that he could not make an actual tender of the full consideration paid by Layne.

The defendant denies plaintiff's allegation that Layne had failed to develop the land under his lease contracts, and in answer to plaintiff's second contention denies that the Layne leases constituted a litigious right, but avers that, if they did, plaintiff could not avail itself of the provisions of the article of the Civil Code relied on, because the offer was not made promptly after the acquisition of the leases by Layne, but only after protracted litigation, and when nearly a year had passed since the parties had entered into the contract with Ramsey for the development of the land pending the litigation. Layne's leases were taken July 25, 1917, subsequent to the filing of the Herndon and Raines suits. On February 28, 1918, plaintiff's authors and Layne executed the contract with Ramsey for the development of the land; on May 2, 1918, Brown and his associates brought suit against Layne for $100,000, damages for slander of title based on the allegation that Layne's leases were invalid, and that they constituted a cloud on plaintiff's title; on June 29, 1918, Layne's right to appeal from the judgment of the lower court sustaining the Dunson leases in the Raines and Herndon cases was sustained by the Supreme Court; and on February 5, 1919, while the slander of title suit was still pending (it was dismissed by plaintiff in June, 1919), Brown wrote his letter to Layne averring that his leases were litigious rights, to rid himself of which he offered to repay to Layne the consideration the latter paid therefor.

## Opinion.

[1] I. No complaint is made by the landowners of any failure of Layne to develop their lands in accordance with his contracts. It is not necessary to determine whether the plaintiff may aver such ground for

forfeiture. Its contention is based on the fact that it was the plaintiff, rather than the defendant, who procured Ramsey to develop the lands; that the defendant merely acquiesced and consented. The lands were developed by neither of the lessees, but by a third party, acting under agreement with them, without expense to either, and it is wholly immaterial that plaintiff took the initiative in making the contract with Ramsey. The development of the land by Ramsey's assignee, the Fortuna Oil Company, inured to the benefit of the one or the other rival lessees, whose leases should be finally decreed paramount.

II. The contention of plaintiff that Layne acquired a litigious right from which plaintiff is entitled to be relieved on repaying defendant the price thereof presents the only serious issue in the case.

[2] Under the Civil Code, art. 2653, "a right is said to be litigious, whenever there exists a suit and contestation on the same." Again, in article 3556, section 18, of the Code, it is stated: 'Litigious rights are those which cannot be exercised without undergoing a lawsuit." By another article of the Code, No. 2447, the purchase of such litigious rights by officers of the court in which they are pending is a nullity.

The purpose of these provisions taken from the Code Napoleon, as stated by the French commentators, is, first, to put a restraint upon the cupidity of the purchasers of litigious rights, and, second, to put an end to litigation over such litigious rights. The leases to Dunson conveyed to him and to his assignees the exclusive right to explore and develop the land for oil (Saunders v. Busch Everett Co., 138 La. 1050, 71 South. 153; Rives v. Gulf Refining Co., 133 La. 178, 62 South. 623), and these leases being in contestation at the time the second leases were made to Layne, conveying to him a similar right, and the latter leases being of no effect if the first leases were valid, counsel contend that such transaction was the transfer to Layne of a litigious right. I do not think the right of the landowners to make a second lease based on the alleged nullity of the first lease can be said to have been the right then in contestation. It is true that the thing in dispute, the issue in the litigation, was the right of Dunson et al. to explore the lands in question for oil and other minerals, but that does not fully state the case; it was something more, it was the right to explore such lands for oil and minerals "under the terms and provisions of the lease contracts from Raines and Herndon to Dunson et al.," the nullity of which leases was then being asserted in the courts by the lessors. It is perfectly clear that the present plaintiff, who acquired the Dunson leases during such litigation, purchased a litigious right; that is to say, the right under such leases to explore the lands for oil and other minerals. The law invoked may apply as against the vendee of one of two distinct leases where the respective rights of the lessees are then in litigation, but that the law was never intended to apply in the case of a party taking a second lease from a landowner, who was at that time suing to annul a prior lease in favor of another party, is evident when the effect of such an application is considered.

Not one landowner in a hundred develops his own land. Even if he should be financially able to do so, not being in the oil business, he would not care to assume the risk. The usual and almost universal

custom is to lease the land to an oil operator, yet no operator would take such a lease of land on which there was a prior lease then in contestation, even though he had no doubt as to the invalidity of such lease. The reason is apparent, the way would thus be opened for such first lessee having an invalid lease to validate it by what in effect would be the forced transfer to him from the second lessee of the latter's valid lease, on the former's returning to him the price he paid. Thus the landowner, while awaiting the slow process of the courts to secure relief from a void lease, might, on the final termination of the litigation, find that all of the oil had been sapped from beneath his lands by wells on adjoining premises. The holder of such an invalid lease might thus, under one pretext or another, neglect to develop the land, and yet effectually prevent its development by another.

In this very case plaintiff claims that Layne's leases were forfeited by failure to develop, and in the preamble of the contract with Ramsey it was recited that the lands, if not developed promptly, would depreciate by reason of the drilling of wells on the adjacent lands, yet had this plaintiff's leases been canceled and had the landowners then sued Layne to revoke his leases for failure to develop, they would have been unable, pending the litigation, to secure development by another, and would have had to suffer their lands to be drained while they awaited the final decree of the court of last resort declaring the leases of no effect.

[3] Under the well-settled jurisprudence of the state, no right is litigious unless it is actually then involved in litigation. Pearson v. Grice, 6 La. Ann. 237; Means v. Ross, 106 La. 175, 30 South. 300; Sanders v. Ditch, 110 La. 903, 34 South. 860. Consequently, if a landowner, having made a void lease of his lands, without waiting to first file suit to have it so decreed, executes a new lease to another party, he does not thereby transfer to such party a litigious right.

[4] These articles of the Civil Code relative to litigious rights were copied from the Code Napoleon; their origin dates back to the Roman Law, many centuries before the ingenuity of man pierced the bowels of the earth, and from its secret reservoirs brought forth its liquid wealth. Such provisions of the Code were never intended to be applicable to cases of this character. They were intended to discourage the traffic in litigious rights, but they were not intended to work a hardship or injustice on the original owner of such a right when he appealed to the courts to have the void contract under which it was claimed by another so decreed. Where applicable, the law invoked was evidently intended to afford relief to the original litigant against whom the litigious right was transferred, whereas in this case both parties are assignees of the original litigants, both acquired an alleged litigious right, and it would seem that neither might therefore claim the privilege provided by article 2652 of the Code, although there is this difference in the position of the parties: Plaintiff's author, Brown, one of the original litigants, while such, made the offer to Layne, now relied on by plaintiff, but such offer to eliminate the then claimant under the alleged litigious right did not inure to the benefit of the subsequent purchaser (the present plaintiff) of such a right. Just as the purchaser of a litigious right does not succeed to the absolute and unqualified right

of his author to prosecute the litigation to final judgment, neither does he succeed to the right of such author, one of the original litigants, to rid himself of the claim of the assignee of the other original litigant.

[5] But if the article were applicable to plaintiff's case, it was necessary that he, in due time and without unnecessary delay, elect to exercise the right or option conferred. As was said by the United States Supreme Court in Cucullu v. Hernandez, 103 U. S. 117, 26 L. Ed. 322:

"It has been repeatedly decided by the Supreme Court of Louisiana that the purpose of article 2652 was to prevent litigation, and therefore a defendant who, instead of paying the price of the transfer, contests the suit and prolongs the litigation, defeats the very object of the article, and cannot exercise the privilege it gives"—citing Marshall v. McCrea, 2 La. Ann. 79; Leftwich v. Brown, 4 La. Ann. 104; Pearson v. Grice, 6 La. Ann. 233; Evans v. De L'Isle, 24 La. Ann. 248.

[6] Just how far short of final judgment one may go before seeking to avail himself of the provisions of the article depends largely on the facts of each case. The offer by Brown was not made until more than a year and a half after execution and recordation of Layne's leases, and almost a year after the contract with Ramsey, in which it was agreed that the proceeds of the sale of the oil which might be found on the lands should be held by the trustee to be finally paid to Layne or to the assignees of the Dunson leases as their respective contentions might be determined by the courts. This agreement, it is contended by counsel for Layne, was in effect an election on the part of plaintiff's author not to avail itself of the provisions of article 2652 of the Code, but to continue the pending litigation to final judgment. As against which contention, counsel for plaintiff directs the court's attention to the provision in the contract that it was "without in any way prejudicing the rights of either of them or of any one in said litigation now pending relative to said leases or the rights of either under their respective leases." The latter phrase of this saving clause, I think, was ample to protect whatever rights under said provision of the Civil Code the plaintiff then had. Within about two months thereafter, however, Brown, and his associates, brought suit against Layne for slander of title, alleging that his second leases constituted a cloud on those of plaintiff. This suit necessarily put at issue the validity or priority of the respective leases, but the suit was not pushed to trial. Thereafter plaintiff contested Layne's right to appeal from the judgment of the lower court in the Raines and Herndon suits against Dunson et al., sustaining the Dunson leases, and it was not until over six months after the Supreme Court of the state had sustained Layne's right to appeal that Brown made his offer to refund to Layne the price which he had paid for his leases. The litigation, at that time, had been prolonged so that one of the main purposes of the law, the prompt termination of litigation, could not have been subserved by the remedy provided by the Code. Still at the time of the offer, there had been no determination, even by the trial court, of the merits of the controversy, and I am inclined to believe that the offer would have been yet within sufficient time had the article been applicable and the status of the alleged litigious right remained the same.

[7] While one of the purposes of this article of the Code is to restrain the cupidity of a purchaser of a litigious right, its purpose is not, conversely, to encourage the cupidity of him against whom the right is asserted. Just as the latter may not await the result of the litigation, and having lost, then seek to avail himself of this provision of the law, neither may he await the result of changing conditions on the value of the thing in dispute. Particularly is this true of rights under an oil lease, which, in the lapse of a short time, may prove to be of fabulous value, or of no worth at all. Neither of the parties to this litigation himself undertook the development of the leased lands. They were fortunate enough to find a third party who was willing to do so on an equal division of the profits, and it was perfectly proper for them to thus rid themselves of the chance of loss of the costs of development, retaining the chance of gain—they each still stood to lose the respective prices paid the landowners for their leases. Had the law invoked been applicable, plaintiff's author should then, while the game was still a gamble, have offered to buy out the defendant, thus relieving the latter of the chance of losing, and himself assuming the chance of loss of the full amount, as against the chance of gain. This he did not do. Both parties continued to back their own judgment until the stem of the drill penetrated the rich petroleum bearing sands, and the precious oil gushed from the earth, as flowed the welcome water from the rock when smitten by the rod of Moses. Even then Brown did not hasten to make his offer. He did not do so until there had accumulated in the hands of the trustee, over and above his half of the cost of operation, a sum in excess of $183,000 (the proceeds are now far in excess of half a million and the wells are still producing). The amount in cash which Layne had paid Raines and Herndon for the leases was $2,440, with the assumption of their obligation to pay their attorney's fees. Brown, without regard to the respective merits of the conflicting claims of the litigants, well might offer at that late date to repay Layne the insignificant price, end the litigation, and secure to himself and associates the accumulated wealth for which they played.

Another article of the Code provides that an uncertain hope may be the subject of a sale, "as a fisher sells a haul of his net before he throws it; and although he should catch nothing, the sale still exists, because it was the hope that was sold, together with the right to have what might be caught." C. C. art. 2451 (2426). But it is evident that one having the option to buy the haul of a fisher's net must bind himself and take his chances before the net is cast. He may not thereafter so elect and claim the rich haul of enmeshed fishes safely brought to land.

Defendant is entitled to a decree rejecting plaintiff's demands, quieting her in her leases, dissolving the injunction heretofore issued, and ordering the trustees to pay over to her the funds in their hands. She is not entitled, however, to recover on her claim for damages for the dissolution of such writ. Layne and plaintiff's author, as before stated, had entered into an express contract for the development of the land by Ramsey, and for the holding by the trustee of the proceeds of the sale of such oil as might be recovered, other than that portion going to

Ramsey, until it was finally determined in the courts which of the litigants was entitled thereto. The plaintiff therefore clearly had the right to such writ of injunction to preserve the fund in the hands of trustees at the time named by the court, until the relative rights of such parties could be finally determined.

A decree will be prepared and entered in accordance with the views herein expressed.